Gerardo **ORTEGA**, Alfredo **Salvatierra**, and Michael D. **PATTON**, individually and on behalf of themselves, all others similarly situated, and the general public, Plaintiffs,

v.

**J.B. HUNT TRANSPORT, INC.,** an Arkansas corporation; and Does 1 to 100, inclusive, Defendant.

No. 2:07–cv–08336 FMC–JCx.

United States District Court, C.D. California.

May 18, 2009.

Arnold W. Schwartz, Schwartz Daniels and Bradley, Christina A. Humphrey, Louis M. Marlin, Marcus J. Bradley, Stanley D. Saltzman, Marlin and Saltzman, Paul T. Cullen, The Cullen Law Firm a Professional Corporation, Agoura Hills, CA, for Plaintiffs.

John Kevin Lilly, Keith A. Jacoby, Scott M. Lidman, Littler Mendelson P.C., Los Angeles, CA, for Defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND ORDER STAYING PORTION OF ACTION PENDING CALIFORNIA SUPREME COURT RULING ON MEAL AND REST BREAK ISSUES

FLORENCE–MARIE COOPER, District Judge.

The matter is before the Court on Plaintiffs' Motion for Class Certification (docket no. 59), filed on March 16, 2009. The Court has read and considered the moving, opposing, and reply documents submitted in connection with this motion. The Court deems the matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7–15. The hearing scheduled for May 11, 2009, was removed from the Court's calendar. For the reasons and in the manner set forth below Plaintiffs' Motion is GRANTED.

## I. EVIDENTIARY RULINGS

The Court has reviewed and considered each of the statements detailed in Defendant's Objections to Evidentiary Submissions by Plaintiffs. Defendant objects to various statements in the Ortega, Patton, and Saltzman Declarations as lacking foundation and representing improper opinion testimony or a legal conclusion. Defendant's objections are OVERRULED. Each of the twenty-one (21) statements to which Defendant objects represents proper lay opinion testimony for which an adequate foundation is laid. To the extent that a handful of the statements may be susceptible to being read as purporting to state legal conclusions, *e.g.*, Def's Objection Nos. 7, 13, 17, 21 (stating that breaks were not "provided" and that no "conflict of interest" exists), the Court considered only the general, lay sense of the legal terms of art contained in those statements.

Similarly, Plaintiffs' Objections to Defendant's Evidence Submitted in Support of Opposition are OVERRULED. Plaintiffs object to four statements in the Garcia Declaration and seven statements in the Regaldo Declaration as lacking foundation and representing improper opinion testimony or a legal conclusion. The statements articulate the factual basis for Defendant's position in this suit, and each statement to which Plaintiffs object represents proper factual background or lay opinion testimony for which an adequate foundation is laid.

The Request for Judicial Notice in Support of Defendant's Opposition is GRANTED only to the extent that the Court takes judicial notice of the existence of the twenty-one (21) "orders from various state and federal courts in California" attached thereto. *Cf. California ex rel. Lockyer v. Mirant Corp.*, 266 F.Supp.2d 1046, 1053 (N.D.Cal.2003) (finding judicial notice public documents filed in various antitrust cases was appropriate because

the documents were part of the public record but noting that "[i]n taking judicial notice of these documents, the court does not adopt their factual findings or holdings; it simply acknowledges their existence and contents"). In all other respects, the Request for Judicial Notice is DENIED because it is not the appropriate device for introducing and arguing that the Court's decision should be guided by binding or persuasive legal precedent. The Court considered only those legal arguments presented by Defendant in its memorandum of points and authorities.

Finally, although no good cause was shown for Defendant's late submission of Judge Larson's recent unpublished opinion in cases involving similar legal issues, attached to Defendant's April 29, 2009 Notice of Lodging in Opposition to Plaintiffs' Motion for Class Certification,[1] the Court declines to strike the Notice of Lodging. The Court has read the opinion and finds that it does not alter the Court's analysis or conclusion regarding the instant Motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of the compensation system of Defendant J.B. Hunt Transport, Inc. ("Defendant"), a motor carrier that transports freight and property to customers nationwide. Since 2002, Defendant has employed that system to pay Plaintiffs, nearly 6,000 local and regional truck drivers previously or currently employed by Defendant as Intermodal and Dedicated Contract Services ("DCS") drivers.[2] Plaintiffs maintain and Defendant does not dispute that the compensation system at issue in this case consists of three key components that apply to both Intermodal and DCS drivers:

(1) Mileage Pay: for distances actually driven, drivers are paid on a per-mile basis for distances actually driven;

(2) Activity–Based Pay: for certain activities (*e.g.*, loading or unloading) drivers are paid a predetermined amount pursuant to Defendant's Activity Based Pay ("ABP") system;[3] and

(3) Hourly Pay: for certain periods of time and activities (*e.g.*, time in excess of 1.5 or 2 hours spent waiting to be assigned a load, time spent in training or going through orientation), drivers are paid on an hourly basis.

The parties do not dispute that pay is *not* separately allocated for certain times or tasks, *e.g.*, for the first 1.5 or 2 hours a driver spends waiting to be assigned a load, time a driver spends fueling trucks, or time a driver spends filling out paperwork at the end of a shift.[4] Similarly, Defendant does not dispute

---

1. Briefing on this matter closed on April 27, 2009.

2. Intermodal drivers generally deliver freight to and from railways, and DCS drivers are assigned to deliver freight for one particular customer.

3. Defendant describes the first two components of the compensation system as follows:

> Defendant's activity-based compensation system is a lawful · piece rate system that uses miles and stops as a proxy for work performed; it is intended to cover *all* activities incident to a delivery. The mileage rate includes pay for all activities incident to a delivery, including those required by the DOT (*i.e.*, time spent conducting the pre-trip and posttrip inspections of the drivers' trucks, time spent completing the required DOT log books). [Regaldo Deck, ¶ 14; Garcia Decl., ¶ 6]. This type of piece rate pay is the recognized method of paying drivers in the trucking industry.

Def's Opp'n at 7:1–8 (emphasis in original). Defendant further explains the purpose and intended effect of the 2002 transition to the new compensation system as follows:

> When the decision was made to change to an activity-based compensation system which would pay drivers based upon a mileage rate plus extra activity-based pay, the intent was to have the complete replacement of hourly wages. The idea was to make sure that drivers would receive the same base amount they had been receiving under the hourly system, but with the ability to earn much more money if they were more efficient. This concept has been proven true, as many drivers concede that they made at least as much, if not substantially more, money under the current compensation system despite the fact that they perform the same tasks and work the same hours.

*Id.* at 7:23–8:6 (internal citations omitted).

4. The parties dispute whether Defendant's compensation scheme is intended to, and does in fact, provide pay for breaks. Plaintiffs take issue with a correction made to the deposition testimony of Robert Schoenberger, Defendant's Regional Operations Manager for Intermodal Operations at the South Gate Facility. At his deposition, Schoenberger's response to the question "And to your knowledge the drivers are not

that Defendant has used an on-board computer system ("OBC system") in its trucks and into which drivers enter at least some of their activities; however, Defendant has not used the OBC system to track or schedule breaks. Pls' Mot. at 11:21–12:4 (citing Jan. 9, 2009 Graves Depo. at 29:11–19, 110:15–20). Nonetheless, Defendant maintains that, taken together, the components of its compensation scheme cover all payment obligations Defendant has to individual drivers in any given day.

On November 19, 2007, Plaintiffs initiated this litigation in Los Angeles Superior Court. On December 27, 2007, Defendant filed its Notice of Removal. Nearly a year later, on November 17, 2008, Plaintiffs filed a First Amended Complaint ("FAC").

With this litigation, Plaintiffs seek damages based on allegations that Defendant's payment practices:

    a. Failed to pay Plaintiffs minimum wages or agreed rates for all hours worked;

    b. Failed to provide Plaintiffs proper meal and rest periods;

    c. Failed to furnish Plaintiffs accurate itemized wage statements;

    d. Failed to timely pay Plaintiffs all wages due them at the time of their termination; and/or

    e. Subjected Plaintiffs to unfair business practices within the meaning of [California Business and Professions Code] §§ 17200 et seq.

FAC ¶ 10.

The Court notes that Plaintiffs do not articulate a class definition in their Motion. However, the FAC identifies the "relevant time period" as beginning four years prior to the filing of the original complaint in this action, continuing at the present time, and expected to continue through to the time of trial in this case. FAC ¶ 3. The FAC also includes the following class definition: "All of Defendants' California-based, local and regional intermodal and local and regional DCS drivers who worked for Defendants during the Relevant Time Period ("Covered Position"). The definition excludes over-the-road drivers." FAC ¶ 19. The FAC also goes on to state that "Plaintiffs further seek to establish one subclass, the Labor Code § 203 Subclass, which is defined as all Class members who worked in a Covered Position during the Relevant Time Period and who are no longer employed by Defendants herein." FAC ¶ 20. However, neither Plaintiffs nor Defendant make any mention of this "subclass" in the their briefing in connection with this motion. The Court treats this as a motion to certify the following class: All of Defendant's California-based, local and regional intermodal and local and regional DCS drivers who worked for Defendant in the four years prior to the filing of the original complaint in this action and/or through to the time of trial in this case. The definition excludes over-the-road drivers.

### III. APPLICABLE LEGAL STANDARD

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001) (citing *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir.1996)). The party seeking class certification bears the burden of demonstrating that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) has been met. *Dukes v. Wal–Mart, Inc.*, 474 F.3d 1214 (9th Cir.2007).

Pursuant to Federal Rule of Civil Procedure 23, one or more members of a class may sue as representative parties on behalf of the entire class only if all of the following four elements are met:

---

paid for rest periods; is that correct?" was "They are not." Salzman Decl. Authenticating Exhibits in Suppt. of Pls' Mot. ("Salzman Decl."), Ex. 3 (Schoenberger Depo.) at 110:15–17. However, a subsequent correction replaced the original response with following language: "There is not a specific amount that is paid to drivers for rest periods. Pay for rest periods is generally included within and covered by the overall mileage rate paid to drivers." Salzman Decl., Ex. 7 (Feb. 23, 2009 letter from Scott Lindman). However, as is discussed below, the parties' dispute on this point raises a merits issue that the Court does not reach in the context of ruling on this motion regarding class certification.

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).[5] In addition, the Court must find that one of the conditions of Rule 23(b) has been satisfied.

Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), which provides that a class action may be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).[6]

In deciding whether to grant class certification, "[t]he court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations." *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975).

## IV. DISCUSSION

Plaintiffs contend that class certification is appropriate because all four of the prerequisites set forth in Rule 23(a) are met and because class certification is appropriate pursuant to 23(b)(3).

Defendant expressly states that it does not dispute that Rule 23(a)'s numerosity, commonality and adequacy prerequisites are satisfied in this case. Def's Opp'n at 11 n. 3. Additionally, despite Plaintiff's concession that minor variations exist among DCS drivers assigned to different accounts, Defendant does not mount a challenge to Plaintiffs' showing that the Rule 23(a)'s typicality prerequisite is satisfied.[7] However, Defendant contends that 23(b)(3) cannot be satisfied in connection with certain claims, and Defendant raises a number of other objections. The Court finds that Rule 23(a)'s prerequisites are satisfied and considers Defendant's other challenges in turn below.

### A. Rest and Meal Break Claims

#### 1. Rule 23(b)(3) "Predominance"

■ "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *see* also Fed.R.Civ.P. 23(b)(3) (providing that a class may be certified where "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (emphasis added)). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino,* 97 F.3d at 1234. Common questions of law and fact predominate over individual questions, satisfying the first component of the Rule 23(b)(3) inquiry, where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/MasterMoney*

---

**5.** The four requirements for class representatives are commonly referred to by the following shorthand labels, respectively: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.

**6.** The two requirements for certification pursuant to Rule 23(b)(3) are sometimes referred to as "predominance" and "superiority."

**7.** "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class. 'Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992) (quoting *Weinberger v. Thornton,* 114 F.R.D. 599, 603 (S.D.Cal.1986)). To satisfy the typicality element, Plaintiffs must demonstrate that both they and their claims are typical of the class. *Dukes,* 509 F.3d at 1183. Representative claims are typical of the class "if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020.

*Antitrust Litig.),* 280 F.3d 124, 136 (2001). In evaluating predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members. *See, e.g., In re Lorazepam & Clorazepate Antitrust Litigation,* 202 F.R.D. 12, 29 (D.D.C.2001) ("As is true in many antitrust cases, the alleged violations of the antitrust laws at issue here respecting price fixing and monopolization relate solely to Defendants' conduct, and as such proof for these issues will not vary among class members." (internal citation and quotation marks omitted)); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.,* 182 F.R.D. 523, 539–40 (N.D.Ohio 1998) (finding that individual issues did not predominate where defendants "engaged in a common course of misrepresentations designed to affect all plaintiffs in a like fashion"); *In re Corrugated Container Antitrust Litig.,* 80 F.R.D. 244, 250 (S.D.Tex. 1978) ("Whether the proof ultimately adduced will establish the existence of a national conspiracy among the defendants is not in issue here; it is not the court's function to weigh this evidence for its truth but merely to ascertain whether it is of a type suitable for classwide use. The court is persuaded that the conspiracy issue . . . is susceptible of generalized proof, since it deals primarily with what the defendants themselves did and said.").

Here, Defendant argues that individual issues necessarily predominate in connection with Plaintiffs' rest and meal break claims because each driver is free to establish and modify his schedule and movement on any given day. Stated otherwise, Defendant argues that any assessment of whether breaks are provided and drivers are compensated for all hours worked will require a highly individualized inquiry into what activities a particular driver performed on a particular day, when and how each driver made decisions about taking breaks, and whether the decision to take a break had any effect on a driver's compensation. *See, e.g.,* Def's Opp'n at 8:20–22 ("Indeed, because drivers have the freedom to establish routes, they can build in break times themselves, without repercussion. This is by and through the drivers

themselves setting their ETA, which many drivers can and do use in order to fit in breaks." (internal citations omitted)); *id. at 9:11–13* ("Plaintiff Patton admitted that the reason he did not take lunch breaks was because, with the incentive-based pay system utilized by Defendant, *he chose to* make more money by not taking such lunch breaks." (internal citations omitted) (emphasis in original)).

The Court disagrees. For purposes of class certification of Plaintiffs' rest and meal break claims, the Court's focus is properly on Defendant's compensation system, as it applies to all potential class members. The question before the Court is whether Defendant's compensation system, including the absence of codes to record breaks in the OBC system and the absence of pay specifically allocated for break periods, is consistent with Defendant's obligation under California law to provide rest and meal breaks to its drivers. This inquiry encompasses the issues of whether Defendant's compensation scheme does, in fact, provide for code-compliant breaks, pay drivers for rest breaks, and otherwise compensate drivers for all time worked.

The California Labor Code provides that:

(a) No employer shall *require* any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer *fails to provide* an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Cal. Labor C. § 226.7 (emphasis added). Additionally, Wage Order No. 9, which applies to the transportation industry provides as follows regarding meal breaks:

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will

complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without *providing* the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C) Unless the employee is *relieved of all duty* during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

(E) In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated.

Cal. Admin. C, Title 8, § 11090(11)(A)-(E) (emphasis added).[8]

At present, the question of the correct interpretation and application of what it means to "provide" breaks is a matter of considerable debate in state and federal cases involving the above-referenced code section and related wage orders.[9] The California Supreme Court recently granted review of two Court of Appeal decisions addressing the issue of what it means for an employer to "provide" meal breaks as opposed to "ensure" that they are taken: *Brinkley v. Public Storage, Inc.*, 198 P.3d 1087, 87 Cal.Rptr.3d 674 (Jan. 14, 2009), and *Brinker Restaurant Corp. v. Superior Court,* 196 P.3d 216, 85 Cal.Rptr.3d 688 (2008). Additionally, the California Court of Appeals Decision in *Cicairos v. Summit Logistics, Inc.,* 133 Cal.App.4th 949, 35 Cal.Rptr.3d 243 (2005), is at the center of that debate, particularly for cases involving truck driver plaintiffs, and it is at the heart of the parties' disagreement over whether class certification is appropriate in connection with Plaintiffs' break claims in this case.

As an initial matter, the Court notes that *Cicairos* does not address class certification requirements. *Cicairos* decided a motion for summary judgment, the resolution of which was concerned with an employer's obligation to provide its drivers with an adequate meal

---

**8.** In their Reply, Plaintiffs note that, regarding meal breaks, Wage Order No. 9 also requires employers to "keep accurate information with respect to each employee[,]" including records of meal periods taken. Pl's Reply at 7:20–25 (citing Cal. Admin. C, Title 8, § 11090(7)(A)(3)). The Wage Order also notes that "[m]eal periods during which operations cease and authorized rest periods need not be recorded." *Id.* The Court's determination that certification is warranted does not rest on this line of argument, which Plaintiffs first raise in their Reply.

**9.** The parties devote less argument to Plaintiffs' *rest* break claims. However, regarding the state regulation of rest breaks, Defendant notes, without citation to a primary source, that "Section 12 Wage Order No. 9 (applicable to the transportation industry) provides only that every employer shall 'authorize and permit' all employees to take ten minute rest periods per every four hours worked or major fraction thereof." Def's Opp'n at 16:1–4; *see* Cal. Admin. C, Title 8, § 11090(12)(A) (also noting that "[a]uthorized rest period time shall be counted as hours worked for which there shall be no deduction from wages"). Defendant argues that, like their meal break claims, Plaintiffs' rest break claims should not be certified because: (a) "whether Defendant failed to authorize and permit a driver to take a rest break is an [sic] question that can only be resolved with individual fact-finding—namely, asking each driver whether they took rest breaks and, if not, why not"; and (b) because the Wage Order only prohibits an employer from *deducting* wages when rest breaks are taken and does not affirmatively require an employer to pay workers for rest breaks. *Id.* at 16:6–9, 16:17–24. The Court's analysis, *infra,* regarding certification of Plaintiffs' meal break claims also applies to Plaintiffs' rest break claims.

period. On the facts before it in *Cicairos*, the California Court of Appeal determined that the employer's obligation "is not satisfied by assuming that the meal periods were taken, because employers have 'an affirmative obligation to ensure that workers are actually relieved of all duty.' (Dept. of Industrial Relations, DLSE, Opinion Letter No. 2002.01.28 (Jan. 28, 2002) p. 1.) They also have a duty, under wage order No. 9, to record their employees' meal periods. The defendant does not claim to have complied with this provision." *Id.* at 962–963, 35 Cal. Rptr.3d 243 (also noting a factual dispute existed because, although the employer's "payroll manger claimed meal period and rest breaks were the sole responsibility of the drivers because the company could not regulate the drivers' activities on the road[,]" the case also involved a collective bargaining agreement which provided that "[l]unch and rest periods will be scheduled by the Company"). Accordingly, *Cicairos* compels no particular conclusion at the class certification stage of the instant litigation.

Beyond that, arguing individual issues predominate in connection with Plaintiffs' break claims in this case, precluding certification pursuant to Rule 23(b)(3), Defendant relies heavily on the persuasive precedent set forth in District Judge Fischer's recent opinion in *Brown v. Federal Express*, 249 F.R.D. 580 (C.D.Cal.2008). The Court agrees that the decision in *Brown* is instructive on the issue of predominance. However, the analysis in *Brown* does not counsel for or compel the same outcome in this case.[10] Although *Brown* also involved break claims by delivery drivers, the potential class members were employed in different job classifications with disparate job duties, and the focus in *Brown* was on scheduling and staffing constraints alleged to have effectively deprived drivers of the opportunity to take code-compliant meal breaks. *See, e.g., id.* at 582–83 (citing Plaintiffs's contentions that Defendant "was committed to making a large number of deliveries on time and devoted insufficient resources to this task. As a result, [drivers] were put under excessive pressure to make deliveries as quickly as possible, such that they were

**10.** *Brown* provides the following analysis of the parties' competing views of an employer's obligation to "provide" breaks:

> None of these [Labor Code] provisions supports Plaintiffs' position that Defendant was required to ensure that Plaintiffs took meal breaks. Section 226.7(a) states that "[n]o employer shall require any employee to work during any meal or rest period." (Emphasis added.) This is clearly inconsistent with Plaintiffs' position. Section 226.7(b) imposes liability "[i]f an employer fails to *provide* an employee a meal period in accordance with an applicable order of the Industrial Welfare Commission." (Emphasis added.) Section 512(a) likewise states that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." (Emphasis added.) The word "provide" means "to supply or make available." Merriam Webster's Collegiate Dictionary 937 (10th ed.2002). It does not suggest any obligation to ensure that employees take advantage of what is made available to them.
>
> The language of the Industrial Welfare Commission Wage Order applicable to Defendant comes closest to imposing a duty to enforce meal breaks, stating that "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes." 8 C.C.R. § 11090(11). However, this language is also consistent with an obligation to provide a meal

break, rather than to ensure that employees cease working during that time. The California Supreme Court has described the interest protected by meal break provisions, stating that "[a]n employee forced to forgo his or her meal period ... has been deprived of the right to be free of the employer's control during the meal period." *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1104, 56 Cal.Rptr.3d 880, 155 P.3d 284 (2007). It is an employer's obligation to ensure that its employees are free from its control for thirty minutes, not to ensure that the employees do any particular thing during that time. Indeed, in characterizing violations of California meal period obligations in *Murphy*, the California Supreme Court repeatedly described it as an obligation not to force employees to work through breaks. [Footnote omitted] *See id.* at 1102, 56 Cal. Rptr.3d 880, 155 P.3d 284 ("The trial court concluded that KCP did not provide Murphy the required meal or rest periods and accordingly awarded Murphy an 'additional hour of pay' for each day Murphy was forced to work through a meal or rest period."), 1104 ("Section 226.7, subdivision (b) requires that employees be paid 'one additional hour of pay' for each work day that they are required to work through a meal or rest period.... An employee forced to forgo his or her meal period ... loses a benefit to which the law entitles him or her.").

*Brown*, 249 F.R.D. at 585–86.

unable to take meal breaks and rest breaks within the time required by law." (internal citations to record omitted)); *id.* at 586 (explaining that the plaintiffs' job duties "var[ied] significantly by job classification" and that "[a]lthough FedEx may have consistent policies that apply across job classifications, their impact on employees' ability to take breaks necessarily depends on each individual's job duties. Analysis of whether drivers' job duties precluded taking meal and rest breaks would vary widely among Couriers"). *Brown* is distinguishable from the facts of this case, in which Plaintiffs challenge whether Defendant's compensation system, which applies in the same manner to all potential class members on all work days, satisfies the requirement that an employer "provide" meal breaks. Whatever the legal meaning of the term "provide" in this context, the question is one common to all potential class members.

Additionally, as Judge Henderson of the Northern District of California recently explained in response to a defendant employer's argument that "the presence of a corporate policy is insufficient" to establish commonality or predominance in connection with a motion for class certification by Federal Express drivers:

> FedEx asserts that because each courier's job is different, due to variations in route, supervisor, and preferences regarding the timing of breaks, common questions of fact do not exist. FedEx seems to be arguing too much with these assertions; it is simultaneously claiming that its policies are consistent with state law but that the policies do not apply evenly to all drivers. This claim is specious. All employees worked as couriers under standardized employment policies that were the basis of their wage calculations. Plaintiffs have identified the relevant policies and the law with which they argue the policies are inconsistent, and as such offer a common question of law and fact that predominates over individual inquiries.

*Bibo v. Federal Exp., Inc.*, Case No. C 07–2505 THE, 2009 WL 1068880 at *10, (N.D.Cal. Apr.21, 2009); *see also id.* at *3 ("Accordingly, [because the state of the law is unsettled on the issue,] the Court cannot interpret the statute in this regard, except to note that it is unnecessary to rule on the meaning of 'provide' to resolve the current motion.").

Here, for purposes of class certification, the Court finds that common issues predominate regarding, *inter alia,* whether Defendant complied with state law obligations to provide and record code-compliant breaks to class members.

### 2. *Rule 23(b)(3) "Superiority"*

To certify the Plaintiffs' proposed class, the second component of Rule 23(b)(3) requires the Court to find "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In determining the class method is superior, courts consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

*Id.* Here, Defendant argues that certification is not appropriate because of the need for individualized damages determinations. Def's Opp'n at 24:16–25:11 (framing issue as one of predominance but arguing against certification because of the individualized damages determinations required by the facts of this case: "Furthermore, Plaintiffs have completely failed to address how drivers are to be compensated in the unlikely event that they can establish that wages are owed for certain activities or missed meal or rest breaks.").

"The amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975). However, the Court should consider whether and how such

individual determinations would need to be made in evaluating "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3)(D). With respect to Plaintiffs' rest and meal break claims, the Court finds that the determination of damages on a class-wide basis is not likely to present a particularly complex or burdensome task. Pls' Reply (arguing that, if Plaintiffs' prevail, the rest break and meal period premiums they seek "will be owed for each and every day worked by each driver"). Accordingly, the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of Plaintiffs' rest and meal break claims,[11] and Rule 23(b)(3) is satisfied because questions of law and fact common to all potential class members predominate over any questions affecting only individual members in connection with Plaintiffs' rest and meal break claims.

### 3. Stay of Rest and Meal Break Claims

■ Despite the Court's determination that Plaintiffs have demonstrated that their rest and meal break claims are amenable to class treatment, the Court hereby stays this action with respect to those claims.

■ "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Among the "competing interests" that a court may weigh in deciding whether to grant a stay are: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.1962) (citing *Landis*, 299 U.S. at 254–255, 57 S.Ct. 163.).

Here, in light of the foregoing discussion of the cases currently pending before the California Supreme Court and the likelihood that the state court resolution of the legal issue (the meaning of "provide" in the California Labor Code) will have a significant impact on the course of this litigation, a stay will serve the interests of the parties and "the orderly course of justice measured in terms of the simplifying ... of issues, proof, and questions of law which could be expected to result from a stay." *Id.* Accordingly, the Court hereby STAYS all further proceedings regarding Plaintiffs' rest and meal break claims until the Supreme Court decides the issue(s) before it in *Brinkley* and *Brinker Restaurant*.

### B. Wage Claims

### 1. Challenge on the Merits

It appears that Defendant intends to challenge Plaintiffs' claim that class members were not paid minimum wages or agreed rates for all hours worked as failing to articulate an actionable claim.[12] *See, e.g.,* Def's

---

**11.** Courts regularly find that a class action is the superior method of adjudication where, as here, "few potential class members could afford to undertake individual litigation against [Defendant] to recover the relatively modest damages at issue. Therefore, in the absence of a class action, few class members would have any meaningful redress against [Defendant] as a practical matter." *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D.Cal.2004); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individ-

ually."); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.2001) (concluding that "the superiority requirement of Rule 23(b)(3) is easily satisfied" in a case involving "multiple claims for relatively small individual sums," where some or most class members "will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").

**12.** For purposes of this Motion, the Court refers to Plaintiffs' minimum wage or "agreed-upon" wage claims as the "wage claims."

Opp'n at 17:10–17 ("The question is not based on the merits of Plaintiffs' claims, but whether a class can be certified where no abstract legal wrong even exists regardless of the particular facts related to the Plaintiffs themselves."); *id.* at 21:14–16 ("As piece rate is a legal form of payment for wages in California, Plaintiffs cannot contend that activities related and necessary to perform the 'piece' of work are not included in the rate.").[13] Defendant's position is that its compensation system is a "piece rate" system which compensates its drivers "for all of their activities" because "Defendant incorporates time spent on tasks incident to the actual driving into the mileage rate paid to its drivers." *Id.* at 20:6–7, 19–20.

Despite Defendant's effort to characterize this line of argument as somehow related to whether class certification is warranted in this case, the Court finds the argument an attempt to argue the merits of this case. The Court declines to rule on the merits of Plaintiffs' wage claims at this juncture. *See Dukes v. Wal–Mart, Inc.,* 509 F.3d 1168, 1177 (2007) (agreeing with the district court's conclusion that the defendant's purported challenges to the plaintiffs' evidence of commonality "related *not* to the Rule 23(a) requirement of commonality but to the ultimate merits of the case and 'thus should be properly addressed by a jury considering the merits' rather than a judge considering class certification" (internal citation omitted) (emphasis in original)).

### 2. *Rule 23(b)(3) Predominance and Superiority*

■ The only challenge Defendant arguably makes to Plaintiffs' "minimum wage" claim pursuant to Rule 23(b) is that the determination of damages would not be conducive to class treatment:

> Once the compensation plan is properly accepted as lawful, the only way to determine whether a driver received minimum wage in a particular week is to analyze the activities of that driver and evaluate

whether the piece rate properly covered all such activities and paid the driver at least minimum wage. This determination would require an analysis of each and every driver for each and every day worked—a highly individualized inquiry which would predominate.

Def's Opp'n at 21:21–26. Defendant makes the same or a very similar argument regarding Plaintiffs' claim that they were not paid at an agreed-upon rate, maintaining that the Court would need to conduct an individualized inquiry into what each driver believed the "agreed upon" compensation rate to be and what amount of time, if any, each driver spent on allegedly unpaid activities. *Id.* at 22:9–25 ("The only way in which this question can be answered is by posing the relevant question to each class member."); *id.* at 24:24–25:2 ("Thus, even if Plaintiffs could establish liability on the wage claims, determining whether a driver engaged in a particular unpaid activity and how long that activity took will result in a predominance of individualized inquiries.")

However inartfully presented, Defendant's argument identifies potential challenges to certification of Plaintiffs' wage claims on the ground that the need for individualized damages determinations would run afoul of Rule 23(b)(3)'s predominance and superiority standards. As noted above, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975). However, the Court should consider whether and how such individual determinations would need to be made in evaluating "the difficulties likely to be encountered in the management of a class action." Fed. R.Civ.P. 23(b)(3)(D).

With respect to Plaintiffs' wage claims, the Court finds that, if liability is established, the determination of damages on a class-wide basis could be achieved by reference to the measures identified by Plaintiffs and not refuted as reliable by Defendant. *See* Pls' Mot. at 23:12–24:26 (suggesting how "[t]his

---

**13.** Defendant characterizes the claim as follows: "Plaintiffs' minimum wage claim contends that they were not paid wages for various activities including pre[-] and post-trip inspections, paper-

work, waiting for dispatch instructions, washing and fueling the tractor." Def's Opp'n at 17:18–20.

[unpaid] time may be derived in part from employee log records, their 'activity time sheets,' and may in part require sampling or deposition testimony of the drivers and/or defendant's witnesses"). The predominant question is whether Defendant's compensation system achieved its articulated goal: compensation for all activities incident to a delivery. The subsequent calculation of compensation required for allegedly "unpaid" time will thereafter be largely a mechanical task and will not require a large number of separate "mini-trials." In particular, under Plaintiffs' theory of the case, it is not necessary to make an individualized determination of how much time each driver spent on each allegedly unpaid activity each day. The collection of necessary information and required calculations do not present an insurmountable obstacle or one that would otherwise make class certification inappropriate under the circumstances. Accordingly, after careful consideration of the non-exhaustive list of factors outlined in Rule 23(b)(3) as well as the documentation submitted by the parties, the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

Accepting as true the allegations in Plaintiffs' Complaint, each member of the putative class is entitled to compensation for portions of days or hours for which no pay (*i.e.,* mileage pay, activity based pay, or hourly pay) was allocated under Defendant's compensation system, and that pay would likely never be recovered but for class treatment. Accordingly, the Court finds that the class method is superior, and that the conditions of Rule 23(b)(3) have been satisfied in connection with Plaintiffs' wage claims.

### C. Labor Code Section 226 "Pay Stub" Violation Claim

■ Section 226 of the California Labor Code provides in pertinent part that:

(a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee....

\* \* \* \* \* \*

(e) An employee *suffering injury* as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Labor C. § 226(a) & (e) (emphasis added).

Here, Plaintiffs allege that the pay stubs and "settlement summaries" that Defendant provided to potential class members were defective in several respects, including that they failed to set forth the mileage pay and pay for specific activities, failed to include the number of hours worked and the hourly rate for activities paid on an hourly basis, and failed to identify what is included in the

"miscellaneous" pay category listed on the pay stubs. Pls' Mot. at 15:8–16:8.

Defendant does not challenge the substance of Plaintiffs' allegations regarding the contents of the pay stubs and settlement summaries or that those documents are standardized documents provided by Defendant to all potential class members. Rather, Defendant purports to challenge Plaintiffs' "pay stub claim" on the ground that individual issues predominate. The premise of Defendant's argument is that, in order to prevail on a claim for violation of California Labor Code Section 226, a plaintiff must demonstrate that he suffered an *actual* injury. Defendant maintains that the testimony of Michael Patton, one of the Lead Plaintiffs in this case, demonstrates that Patton did not suffer any injury as a result of the alleged pay stub violations. Def's Opp'n at 23:22–24:5 (quoting Patton testifying as follows regarding his perception of whether he was "damaged in some respect by the fact that [his] pay may not have had certain information that it was required to have": "I don't know if that was so much damaging. I mean, given-having those slips or the trip sheets, I usually, on the average, knew what I was making per day, on the average. I could usually do the math in my head and figure out approximately what I was going to get gross. So if the information was not on the check stub, it wouldn't have affected me one way or another.").

Defendant is correct that liability will lie for violations of Labor Code Section 226 only where "some specific injury caused by the inaccuracy" can be identified. *See Elliot v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181 (C.D.Cal.2008). However, the types of injuries on which a Section 226 claim may be premised include "the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked." *Id.*

Here, neither the allegations in Plaintiffs' Complaint nor the referenced portion of Lead Plaintiff Patton's deposition testimony compels a determination that Plaintiffs have not alleged or cannot demonstrate injury sufficient to support a claim for violation of Labor Code Section 226. In fact, Patton's statement that he "could usually do the math in [his] head and figure out approximately what [he] was going to get gross" is consistent with the type of injury that has been found sufficient to support a claim for violation of Section 226. Accordingly, particularly in light of the fact that the pay stubs and settlement summaries provided to California drivers are standardized documents, the Court finds that Plaintiffs have demonstrated that certification of their pay stub claim is appropriate.

### D. Labor Code Section 203 and Business and Professions Code Section 17200 Claims

Defendant's only challenge to Plaintiffs' claims pursuant to California Labor Code Section 203 and California Business and Professions Code Section 17200 is that these claims are wholly derivative of Plaintiffs' other claims and should not be certified if the other claims are not certified. Because the Court finds that Plaintiffs have demonstrated that certification of their other claims is appropriate, this challenge to these "derivative" claims fails and Plaintiffs' request that their claims pursuant to California Labor Code Section 203 and California Business and Professions Code Section 17200 be certified is granted.

### V. CONCLUSION

Therefore, Plaintiffs' Motion for Class Certification (docket no. 59) is GRANTED. The Court certifies the following class: All of Defendant's California-based, local and regional intermodal and local and regional DCS drivers who worked for Defendant in the four years prior to the filing of the original complaint in this action and/or through to the time of trial in this case. The definition excludes over-the-road drivers. Additionally, the Court hereby STAYS all further proceedings regarding Plaintiffs' rest and meal break claims until the Supreme Court decides the issue(s) before it in *Brinkley* and *Brinker Restaurant.* The parties are ordered to file

a joint statement to the Court regarding how the remainder of this case should proceed, if at all, while proceedings are stayed in connection with Plaintiffs' rest and meal break claims, *e.g.*, whether discovery can be efficiently bifurcated to proceed with respect to other aspects of Plaintiffs' case. The parties' joint statement shall not exceed 15 pages and shall be filed with the Court within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**