Catherine E. AVILEZ, on Behalf of Herself and All Others Similarly Situated, Plaintiff,

v.

**PINKERTON GOVERNMENT SERVICES, and Does, Defendants.**

No. SACV 11–0493 DOC(RZx).

United States District Court, C.D. California, Southern Division.

Oct. 9, 2012.

Daniel H. Chang, Larry W. Lee, Diversity Law Group APC, Edward Wonkyu Choi, Paul M. Yi, Choi & Associates PC, Los Angeles, CA, for Plaintiff.

John Kevin Lilly, Littler Mendelson PC, Los Angeles, CA, Sherry B. Shavit, Thomas Patrick Brown, IV, Brown Gitt Law Group LLP, Pasadena, CA, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

DAVID O. CARTER, District Judge.

Before the Court is a Motion for Class Certification filed by Plaintiff Catherine Avilez ("Plaintiff"). (Dkt. 30). After considering the moving papers and oral argument, the Court GRANTS the Motion.

### I. Background

#### a. Gravamen of Plaintiff's claims

On September 22, 2011, Plaintiff filed a Second Amended Complaint ("SAC"). *See* SAC (Dkt. 23). The gravamen of Plaintiff's SAC is that Defendant violated California employment law because: (1) Defendant's policy requiring that its security guard employees remain *on*-duty during meal breaks resulted in Defendant not providing *off*-duty breaks; (2) the remedy for this violation is an additional premium wage, and Defendant's failure to record this additional premium wage resulted in inaccuracies in employees' wage statements.

#### b. Plaintiff's Motion for Class Certification

On December 30, 2011, Plaintiff filed the instant Motion for Class Certification. Mot.

(Dkt. 30). Plaintiff seeks class certification for violation of the following California laws:

(1) Failure to provide off-duty meal breaks in violation of California Labor Code § 226.7;

(2) Failure to keep accurate records in violation of California Labor Code § 226;

(3) a derivative claim under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code, § 17200 et seq.

*See* Mot. (Dkt. 31) at 1; Second Am. Compl. (Dkt. 23) at 9, 11, 12.[1]

Plaintiff seeks to certify the following two classes ("Classes"):

(1) "all DEFENDANTS' past and present California employees who worked more than 5 hours in any work shift as a Security Guard from September 17, 2009 through the present" (*"Meal Break Class"* or *"Class 1"*); and/or

(2) "all DEFENDANTS['] past and present California employees who worked as Security Guards from September 17, 2009 through the present who received itemized wage statements" (*"Wage Statement Class"* or *"Class 2"*);

Alternatively, if this Court is not inclined to certify these Two Classes because of Defendant's potential affirmative defense regarding some employees' purported agreement to waive their right to bring a class action, Plaintiff seeks to certify the following four subclasses ("Subclasses"):

(a) "all DEFENDANTS' past and present California employees who worked more than 5 hours in any 'on-duty meal break' work shift as a Security Guard from September 17, 2009 through the

---

1. Plaintiff does not seek to certify a class for a fourth claim under California Labor Code § 2698 et seq., commonly referred to as the California Private Attorney General Act ("PAGA"). *See* Mot. at 16. Plaintiff does not seek to certify a class because, as Plaintiff correctly notes, both the California Supreme Court and the vast majority of district courts in this circuit have held that a PAGA claim "need not" meet class certification requirements. *Arias v. Superior Court*, 46 Cal.4th 969, 975, 95 Cal. Rptr.3d 588, 209 P.3d 923, 926 (2009); *McKenzie v. Fed. Exp. Corp.*, 765 F.Supp.2d 1222, 1233 (C.D.Cal.2011) (listing several district courts in California that "have held that the class certification requirements of Rule 23 do not apply to PAGA claims"). Indeed, this Court has previously reached that same conclusion and held that, "[s]ince PAGA plaintiffs neither represent the rights of a class nor recover damages, a PAGA claim neither purports to be a class action nor intends to accomplish the goals of a class action." *Cardenas v. McLane Foodservice, Inc.*, SACV 10–473 DOC FFMX, 2011 WL 379413 (C.D.Cal. Jan. 31, 2011).

present" (*"Meal Break Subclass"* or *"Subclass (a)"*);

(b) "all DEFENDANTS['] past and present California employees who worked as Security Guards in any 'on-duty meal break' work shift from September 17, 2009 through the present who received itemized wage statements" (*"Wage Statement Subclass"* or *"Subclass (b)"*);

(C) "all DEFENDANTS' past and present California employees who worked more than 5 hours in any 'on-duty meal break' work shift as a Security Guard from September 17, 2009 through the present and who did not sign any Dispute Resolution Agreement containing a Class Action Waiver" (*"No–Signed–Waiver Subclass"* or *"Subclass (c)"*);

(d) "all DEFENDANTS' past and present California employees who worked more than 5 hours in any 'on-duty meal break' work shift as a Security Guard, and was presented with and signed a Dispute Resolution Agreement containing a Class Action Waiver, at any time between September 17, 2009 through the date each respective employee signed said agreement" (*"Signed–Waiver Subclass"* or *"Subclass (d)"*).

## II. Legal Standard

Federal Rule of Civil Procedure 23 governs class actions. Fed.R.Civ.P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citing Fed.R.Civ.P. 23(a)).

After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the

defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R.Civ.P. 23(b)(1–3).

■ A party seeking class certification must affirmatively demonstrate compliance with Rule 23—that is, the party must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact. *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2550, 2551, 180 L.Ed.2d 374 (2011). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977). A class certification motion requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal–Mart*, 131 S.Ct. at 2550. However, neither "the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies [Rule 23]." *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir.2010). "[N]othing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Id.* (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)).

■ The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. American Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.2010).

## III. Discussion

For the reasons stated below, the Court concludes that Plaintiff has satisfied all the requirements of Rule 23(a) and (b)(3).

**456**

### a. Plaintiff has satisfied the four requirements of Rule 23(a)

### i. Numerosity under Rule 23(a)(1)

■ Numerosity, the first prerequisite of class certification, requires that the class be "so numerous that joinder of all members is impractical." Fed.R.Civ.P. 23(a)(1). A proposed class of at least forty members presumptively satisfies the numerosity requirement. *See Jordan v. Los Angeles County,* 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds by County of Los Angeles v. Jordan,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982); *Slaven v. BP America, Inc.,* 190 F.R.D. 649, 654 (C.D.Cal.2000).

Here, Defendant concedes that any of the Classes or Subclasses satisfy the numerosity requirement and the evidence that Plaintiff and Defendant have presented in this motion confirm that this prerequisite is satisfied. *See* Opp'n (Dkt. 40) at 11:19–20. For example, Defendant's own survey shows that there were at least 538 "active officers," that is, current employees at the time of the survey. *See* Goldberg Decl. (Dkt. 41) at 4. The parties do not dispute that, with the addition of former employees, there are approximately 1,439 Security Guards within the Meal Break and Wage Statement Classes. *See* Mot. at 1. In sum, the Court concludes each of the Classes and Subclasses contain at least forty members and thus the numerosity requirement of Rule 23 is satisfied. *See Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524, 533 (C.D.Cal.2011) ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied.").

### ii. Typicality under Rule 23(a)(3)

■ "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*

*v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir.2011) (quotation marks omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." [2] *Id.* The typicality requirement demands that a named plaintiff's claims be "reasonably co-extensive with those of absent class members," although "they need not be substantially identical." *Hanlon,* 150 F.3d at 1020.

"The purpose of the typicality requirement is to assure that the interests of the named representative aligns with the interests of the class." *Hanon,* 976 F.2d at 508. "[A] named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992).

■ Plaintiff is typical of the putative class because both Plaintiff and the putative class seek recovery based upon the same legal theories and course of conduct by Defendant, namely, that Defendant's policy of on-duty meal breaks results in a practice of failing to provide off-duty meal breaks. The claims by both Plaintiff and the putative class rise and fall based on whether Defendant's policy requiring that each Security Guard take only an "on-the-job meal period" resulted in Defendant failing to provide off-duty meal breaks, thus violating California Labor Code 226.7 and Wage Order 4–2001 § 11.

■ Defendant argues that Plaintiff is atypical because some unstated number of putative class members signed a document purporting to waive their right to participate in a class action against Defendant, whereas Plaintiff signed no such document. However, Defendant cites no authority for the proposition that a Plaintiff is atypical if she has a *stronger* claim than some of the putative class members, that is, if Plaintiff is *not* subject to defenses that may defeat the claims of the putative class members. Such

---

**2.** Because the plain language Rule 23(a) does not require a showing regarding "specific facts from which [a claim or defense] arose," Defendant's arguments about the factual differences between the nature of Plaintiff's work and that of the

putative class members are not appropriately addressed here. *See Ellis,* 657 F.3d at 984 (9th Cir.2011). Instead, the Court addresses this argument under the commonality analysis.

a rule turns the purpose of the typicality requirement on its head; the purpose of the typicality requirement is to assure that the putative class members do not suffer from their representative's vulnerability to defenses unique to the *representative. See Hanon,* 976 F.2d at 508; *Ellis,* 657 F.3d at 984. Defendant's rule would arm any defendant with ammunition to pick off exactly those putative representatives who are the best champions of the putative class and most likely to succeed in their claims, leaving only those representatives whose claims are so riddled with infirmities that the class action could be dismissed at summary judgment. Given that the purpose of the typicality requirement is to *protect* the putative class rather than to *sabotage* it, the Court rejects Defendant's proposed rule. *See Tierno v. Rite Aid Corp.,* No. C 05–02520 TEH, 2006 U.S. Dist. LEXIS 71794, 2006 WL 2535056, at *2 (N.D.Cal. Aug. 31, 2006) (certifying class under Rule 23(b)(3) and rejecting defendant's argument because it was irrelevant to the typicality inquiry where defendant argued that the vast majority of the putative class members had jobs with tasks of exempt employees and thus were subjected to an affirmative defense to which plaintiff was not subjected).

Thus, the Court concludes that Plaintiff is typical of both the two Classes and the four Subclasses and has satisfied the typicality requirement of Rule 23.

### iii. Adequacy of the Named Representative

██ An adequate representative is one who will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee,* 311 U.S. 32, 43, 61 S.Ct. 115, 85 L.Ed. 22 (1940). A representative is adequate where: (1) there is no conflict of interest between the representative and its counsel and absent class members, and (2) the representative and its counsel will "pursue the action vigorously on behalf of the class." *Hanlon,* 150 F.3d at 1020 (internal citations and quotations omitted).

### 1. Class counsel are competent

Defendants do not dispute and the evidence confirms that, as detailed in their declarations, Plaintiff's counsel are experienced class action litigators who have litigated many wage and hour class actions and have been certified as class counsel in numerous other class actions, particularly wage and hour class actions. Lee Decl. ¶¶ 3–7; Choi Decl.¶¶ 3–6. Plaintiff's counsel have taken the deposition of Defendant's 30(b)(6) witnesses on two separate occasions, propounded and responded to discovery, and have pursued matters in law and motion as deemed necessary. Lee Decl. ¶¶ 8–9; Choi Decl.¶¶ 7–8. Plaintiff's counsel's only relationship with Plaintiff is the attorney-client relationship in this matter. Lee Decl. ¶ 10; Choi Decl.¶ 9. Accordingly, Plaintiff's Counsel are adequate.

### 2. Plaintiff is an adequate representative

Plaintiff avers that she has no conflict of interest with the putative class, is fully prepared to take all necessary steps to fairly and adequately represent the Two Classes, and has agreed to abide by all of the necessary duties of a class representative, including assisting counsel in the litigation. Avilez Decl. ¶¶ 6–8.

Defendant contends that Plaintiff has a conflict with some of the putative class members because: (1) a majority of the 30 currently-employed Security Officers that Defendant surveyed indicated that they like "the present arrangement"; and (2) if this class action succeeds, Defendant has decided that it will make changes to its meal break policy that these survey respondents will not like, such as extending putative class members' shifts by half an hour and imposing unpaid off-duty meal breaks. Opp'n at 23–24; Goldberg Decl. at 4, 21 (noting that 23 of 25 current employees with on-duty meal periods responded via survey that "they like the present arrangement and prefer to keep it that way").

"Unlike a summary judgment motion under Fed.R.Civ.P. 56, a motion for class certification ... need not be supported by admissible evidence." *Parkinson v. Hyundai*

*Motor Am.*, 258 F.R.D. 580, 599 (C.D.Cal. 2008) (certifying some classes); *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621, *2 n. 18, 2008 U.S. Dist. LEXIS 5296, *8 n. 18 (C.D.Cal. Jan. 7, 2008) (same). However, the court "should not abandon admissibility standards entirely at the certification stage." *Parkinson*, 258 F.R.D. at 599. "For example, when expert reports are cited in support or opposition of certification, the Court need not engage in a full *Daubert* ... analysis; however, the Court should conduct a limited inquiry into the reliability of the expert opinion and its relevance to determining a Rule 23 requirement." *Id.*

Defendant relies on *Lanzarone v. Guardsmark Holdings, Inc.*, which denied class certification on *every ground* under Rule 23(a), including adequacy of class representative. *See* 2006 WL 4393465, 2006 U.S. Dist. Lexis 95785 (C.D.Cal. Sept. 7, 2006). In holding that the adequacy of class representative requirement was not met, the court concluded that a conflict existed between the plaintiff and the "sizeable segment of absent class members" who "would rather work during and be paid for their meal periods than be forced to take off-duty and unpaid meal periods." *Id.* at *7, 2006 U.S. Dist. Lexis 95785 at *22.

■ Defendant's argument is based on its expert's survey of 30 employees. Plaintiff objects to this survey and the 30 employees' declarations because neither the expert nor the employee declarants' names or contact information were produced in Defendant's Initial or Supplemental Disclosures on June 2, 2011. Lee Supp. Decl. (Dkt. 50) ¶¶ 3–4, Exs. E & F. The Court agrees with Plaintiff and STRIKES the survey and declarations because Defendant's failure to disclose its expert and employee declarants violated Federal Rules of Civil Procedure Rule 26(a)(1)(A). Fed. R. Civ. Proc. 26(a)(1)(A)(i) (requiring a party to, "without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment").

■ Alternatively, the Court declines to follow *Lanzarone* because that decision betrays a deep naïveté about the motivations behind and credibility of current employees' responses to employer-elicited questions regarding employees' contentment with their employer's policy. An employee has every incentive to answer "yes" when her employer's attorney asks if she likes her employer's current practice, as an affirmative answer may endear her to current management and a negative answer may endanger her job, earning her at best the reputation of having a "bad attitude" or "not being a team player" and at worst a retaliatory termination. The incentives to answer untruthfully are even more skewed where, as here, the employer's question concerns a practice *currently being litigated in a putative class action as an illegal practice*.[3] Thus, even if this Court

3. The risk an employee assumes by informing her employer that she does not like its allegedly illegal practice is well documented. The California Supreme Court has recently noted that "retaliation against employees for asserting statutory rights under the [California] Labor Code is widespread," despite anti-retaliation statutes designed to protect employees, and therefore "fear of retaliation for individual suits against an employer is a justification for class certification in the arena of employment litigation." *Gentry v. Superior Court*, 42 Cal.4th 443, 460–61, 64 Cal. Rptr.3d 773, 165 P.3d 556, 566 (2007) (citing DLSE statistics from 2000–2004 showing that wage and hour complaints under California anti-retaliation statute ranged from 446 to 808 annually). The United States Supreme Court and federal circuits have similarly recognized that "fear of economic retaliation" will force workers "quietly to accept substandard conditions." *See Kasten v. Saint–Gobain Performance Plastics Corp.*, —— U.S. ——, 131 S.Ct. 1325, 1333, 179 L.Ed.2d 379 (2011); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir.1999) (explaining that it is "reasonably presumed" that potential class members still employed by employer "might be unwilling to sue individually or join a suit for fear of retaliation at their jobs"). Furthermore, the National Labor Relations Act imposes limits on an employer's ability to poll its workers precisely because employer's inquiries regarding their employees' viewpoints are not always innocuous. *See Struksnes Constr. Co.*, 165 NLRB 1062 (1967) (seminal case limiting employer's ability to poll employees because "any attempt by an employer to ascertain employee views and sympathies ... generally tends to cause fear of reprisal in the mind of the

had not struck Defendant's survey as a discovery sanction, this Court would give little weight to survey responses that "may have indicated overall satisfaction with the" defendant, "but that may reveal more about [the respondent's] loyalty than whether or not they had an ... experience that would render them class members." *Charlebois v. Angels Baseball, LP*, 2011 WL 2610122 at *7, 2011 U.S. Dist. LEXIS 71452 at *20–21, *24 (C.D.Cal. June 30, 2011).[4]

Furthermore, even if the survey answers were credible, the survey's process for participant selection and one-sided questions render it unreliable. For example, the survey's creator notes that he was "provided with a list of 538 active officers" from which to chose participants, but does not identify who culled the original list of 538 employees or the criteria for the culling. *See* Goldberg Decl. (Dkt. 41) at 4. In addition, while the survey creator states that he chose participants at "random," he also concedes that the randomness was tempered by the decision to exclude *former* employees. *Id.* at 5 n. 4 (explaining that no interviews were conducted with employees who "terminated since the time the initial sample was drawn"). Based

on the calculations of Defendant's 30(b)(6) deponent and Plaintiff, former employees constitute between 52% and 72% of the 1,439 Security Guards in the putative class. *See* Lee Decl. (Dkt. 37–1) Ex. A (Kemppainen Depo.) at 71:16–23 (stating that the number of "security officer employees [who] are currently employed" is "in excess of 400"); Reply (estimating that class includes "over 750 former employees"). As *former* employees, these class members have no conflict with Plaintiff based on Defendant's plan, if this class action is successful, to change the meal period policy for *current* employees. Finally, Defendant's survey failed to ask its 30 current employees whether they would like to receive the very benefit this class action would provide: additional pay for *past* work. It can be reasonably assumed that all employees would be in favor of being paid more for work already done. Thus, this Court gives little weight to the survey. *See Charlebois*, 2011 WL 2610122 at *8, 2011 U.S. Dist. LEXIS 71452 at *24 (declining to consider survey evidence that "lack any indicia of reliability").[5]

Alternatively, even if *Lanzarone* is good law—which this Court very much doubts[6]—

---

employee" and noting that "such employee fear is not without foundation [given] the innumerable cases in which the prelude to discrimination was the employer's inquiries"); *Wagon Wheel Bowl, Inc. v. N.L.R.B.*, 47 F.3d 332, 335 (9th Cir.1995) (applying *Struksnes* poll standard).

4. Furthermore, unlike cases which have relied on surveys of employees by *plaintiff's* attorneys in class certification motions, Defendant here made no effort to minimize the risk of retaliation by redacting identifying information. *See Bell v. Addus Healthcare, Inc.*, 2007 WL 3012507, 2007 U.S. Dist. LEXIS 78950 (W.D.Wash. Oct. 12, 2007) (denying defendant-employer's motion to strike plaintiff's questionnaires and noting "Plaintiff redacted all identifying information from the majority of the questionnaires"). Defendant's expert merely avers that current employees were "assured that the content of their responses would not impact their current or future standing as an officer and that their responses would not be shared with their immediate supervisors." *See* Goldberg Decl. (Dkt. 41) ¶ 9. Such assurances do not protect an employee from retaliation given that management *other than* the employee's immediate supervisor can retaliate against that employee. In addition, Defendant's promise to keep employees' answers from immediate supervisors does not appear to have been kept, as Defendant identified specific

employees by name in their Opposition and attached some of these declarations for all the world to see. *See e.g.*, Opp'n at 3 n. 7.

5. In addition, as Plaintiff notes, Defendants have failed to file with this Court at least one employee's declaration on which Defendant and its expert relies. Reply at 6 n. 3.

6. In addition to *Lanzarone's* highly questionable reasoning regarding the use of employer-elicited questions of employees, the Court has significant doubts about the validity of the *Lanzarone* holding on this issue given that *Lanzarone* is no longer good law in at least one other respect. Whereas *Lanzarone* held that Section 226.7 violations constituted a "penalty" and thus were subject to only a one-year statute of limitations, that position was roundly rejected by the California Supreme Court a year later as contrary to the "statute's plain language." *Compare Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1114, 56 Cal.Rptr.3d 880, 155 P.3d 284 (2007) *with Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465, at *1, 2006 U.S. Dist. LEXIS 95785, at *2–3 (C.D.Cal. Sept. 7, 2006). The Court's doubts about *Lanzarone* are also reinforced by its curious citation to out-of-circuit authority for basic propositions of federal procedural law, as well as out-of-state authority for

and even if Defendant's survey of 30 current employees is a reliable indicator of the preferences of the 1,439 former and current employees, the survey would still not demonstrate a conflict between Plaintiff and the putative class because the purported conflict is entirely of *Defendant's* own making. Defendant states that, if this class action succeeds, Defendant has decided that it will make changes to its meal break policy that these survey respondents will not like, such as extending putative class members' shifts by half an hour and imposing unpaid off-duty meal breaks. Opp'n at 23 n. 92; Goldberg Decl. (Dkt. 41) at 4, 21. This argument is a red herring because Plaintiff does not demand that Defendant change its practice *in the future.* All that Plaintiff seeks is redress for Defendant's *past* violations by having Defendant pay the additional meal break premium required where an employer imposes on-duty meal breaks without satisfying the exception provided in Wage Order 4–2001. If Defendant's current policy is illegal, Defendant can fix its policy and practice in several ways; for example, Defendant could provide an off-duty meal period *without* reducing its employees' total take-home pay. Defendant can not manufacture a conflict between Plaintiff and the putative class simply by threatening its employees with an undesirable change in policy if its policy is found to be illegal. If Defendant wishes to punish the putative class members by imposing new meal break policies that they purportedly do not want, it is Defendant that is in conflict with its employees, not Plaintiff.

Finally, Defendant's proposed rule is contrary to the purpose of both the federal procedural and the California substantive law at issue here because Defendant's proposed rule would insulate every defendant-employer from a class action where the defendant-employer introduced evidence that its employees "like" the disputed policy—*even if the policy is indisputably illegal.* This result is absurd for two reasons. First, class actions already have a vehicle by which a class member who likes the current policy may express this view: the class member

propositions of California law. *See e.g., Lanzarone,* 2006 WL 4393465, at *4–5, 2006 U.S. Dist. LEXIS 95785, at *14 (C.D.Cal. Sept. 7, 2006)

may simply opt-out. Second, this result undermines the enforcement of meal and rest break laws by eliminating the primary mechanism by which those laws are enforced: class actions. Eliminating the primary mechanism for bringing legitimate claims is contrary to the Class Action Fairness Act ("CAFA")—the statute that provides this Court with the jurisdiction necessary to apply Rule 23—because the "express purpose of . . . CAFA[ ] is to 'assure fair and prompt recoveries for class members with legitimate claims.' " *See Bruno v. Eckhart Corp.,* 280 F.R.D. 540, 548 (C.D.Cal.2012) (quoting Class Action Fairness Act of 2005, Pub.L. No. 109–2 § 2, 119 Stat. 4 (2005) (codified as note to 28 U.S.C. § 1711)). In addition, eliminating class actions that bring legitimate claims is contrary to the California meal and rest break laws at issue here because those laws were amended in 2000 by the California legislature to *add* the monetary remedies that make class actions a financially-viable mechanism for enforcing these laws. *See Brinker Rest. Corp. v. Superior Court,* 53 Cal.4th 1004, 1038, 139 Cal.Rptr.3d 315, 273 P.3d 513, 535 (2012) ("As part of its response to the [Industrial Welfare Commission's ("IWC")] rollback of employee protections, the [California] Legislature wrote into statute various guarantees that previously had been left to the IWC, including meal break guarantees."); *id.* at 1017, 139 Cal.Rptr.3d 315, 273 P.3d 513 (explaining that, in 2000, the California legislature "adopted for the first time monetary remedies for the denial of meal and rest breaks" which "engendered a wave of wage and hour class action litigation").

In sum, the Court concludes that Plaintiff has satisfied the adequate class representative requirement of Rule 23(a).

### iv. Commonality under Rule 23(a)(2)

The "commonality" prerequisite mandates that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Commonality requires that the class's claims are based on a "common contention . . . capable of classwide resolution," meaning that

(citing exclusively district courts in Connecticut, Louisiana, and New Jersey in its analysis of the predominance requirement of Rule 23(b)(3)).

determination of the "truth or falsity" of that contention "will resolve an issue that is central to the validity of [the class's] claims." *Wal–Mart Stores, Inc. v. Dukes,* — U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011).

The requirements of Rule 23(a)(2) have "been construed permissively," and just one common question of law or fact will satisfy the rule. *See Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir.2011). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion [predominance] requirements of Rule 23(b)(3)." *Id.*

This Court addresses the Meal Break Class, Wage Statement Class, and Subclasses below.

### 1. Meal Break Class

Plaintiff seeks to certify a Meal Break Class, defined as "all DEFENDANTS' past and present California employees who worked more than 5 hours in any work shift as a Security Guard from September 17, 2009 through the present." Plaintiff's theory is that Defendant had a policy and practice requiring employees to take only *on*-duty meal periods, resulting in Defendant failing to provide *off*-duty meal periods as required by California law, namely: (1) California Labor Code § 226.7(b) and IWC Wage Order 4–2001; and (2) a derivative claim under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code, § 17200 et seq. *See* Mot. (Dkt. 31) at 1.

#### a. Legal basis of putative class's claim

In order to determine whether there are common questions of law or fact, this Court reviews the law regarding the putative class's claim. *See Wal–Mart Stores, Inc. v. Dukes,* — U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) ("[C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."); *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 947 n. 15 (9th Cir.2009) ("The district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis.").

California requires employers to provide meal breaks to employees in compliance with wage orders issued by the Industrial Welfare Commission (IWC).[7] *See* Cal. Lab.Code § 226.7(a). If an employer fails to provide a meal break to an employee in accordance with the applicable IWC wage order, the employer must pay the employee one additional hour of pay for each work day that the meal period is not provided. *See* Cal. Lab.Code § 226.7(b); Cal.Code Regs. tit. 8 ("IWC Wage Order 4–2001"), § 11090(11)(D).

IWC Wage Order 4–2001[8] requires employers to provide a 30–minute meal break to employees who work more than five hours per day and a second 30–minute meal break to employees who works more than ten hours per day. *See* IWC Wage Order 4–2001 § 11(A–B). The IWC also requires that the 30–minute meal break be one in which the employee is "relieved of all duty"—commonly referred to as an "off-duty meal break"— "unless" an exception applies that allows the employer to provide *on-duty* meal breaks. *See id.* at § 11(C). That exception requires

---

**7.** "[T]he IWC is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California." *Tidewater Marine W., Inc. v. Bradshaw,* 14 Cal.4th 557, 561, 59 Cal.Rptr.2d 186, 927 P.2d 296 (1996). California "wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the [California] Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." *Brinker Rest. Corp. v. Superior Court,* 53 Cal.4th 1004, 1026, 139 Cal.Rptr.3d 315, 273 P.3d 513, 527 (2012).

Wage orders regarding meal and rest period requirements "must be interpreted in the manner that best effectuates th[e] protective intent" of the legislation, which was a "remedial worker protection framework." *Id.* at 1027, 139 Cal. Rptr.3d 315, 273 P.3d 513.

**8.** 8 Cal.Code Regs § 11090 is commonly referred to as IWC Wage Order 4–2001. *See Dilts v. Penske Logistics, LLC,* 267 F.R.D. 625, 635 (S.D.Cal.2010).

that: (1) "the nature of the work prevents an employee from being relieved of all duty"; (2) "an on-the-job paid meal period is agreed to" by "written agreement between the parties"; and (3) the written agreement states that "the employee may, in writing, revoke the agreement at any time." *See id.; see also* DLSE Opinion Letter 2002-09-04.

█ In sum, a *prima facie* case of California Labor Code 226.7 and Wage Order 4-2001 § 11 violations requires Plaintiff to establish that Defendant failed to provide off-duty meal breaks.[9] The statutory exception allowing for on-duty meal breaks where the "nature of the work" and other requirements

are met is an *affirmative defense* for which Defendant bears the burden.[10]

### b. Common question of law and fact exist regarding putative class's prima facie case

█ The prima facie case regarding the Meal Break Class's claim can be resolved by the following common question: Did Defendant's policy and practice requiring that each Security Guard take only an "on-the-job meal period"[11] result in Defendant failing to provide off-duty meal breaks, thus violating California Labor Code 226.7 and Wage Order 4-2001 § 11? The common contention shared

9. *See* IWC Wage Order 4-2001 § 11(A-B); *cf. Kirby v. Immoos Fire Prot., Inc.,* 53 Cal.4th 1244, 1256-57, 140 Cal.Rptr.3d 173, 274 P.3d 1160, 1168 (2012) ("The failure to provide required meal ... breaks is what triggers a violation of [California Labor Code] section 226.7."); *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004, 1040, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012) (interpreting language in Wage Order No. 5, Cal.Code Regs., tit. 8, § 11050, which is materially identical to Wage Order 4-2001, to hold that "an employer's duty to provide meal periods ... mean[s] to relieve its employee of all duty"); *Ricaldai v. U.S. Investigations Services, LLC,* 878 F.Supp.2d 1038, CV 10-07388 DDP PLAX, 2012 WL 2930474 (C.D.Cal. May 25, 2012) (applying *Brinker* to deny defendant summary judgment because plaintiff could show meal breaks were denied where plaintiff "offer[ed] evidence that she was implicitly trained to take working lunches, expressly told that personal errands were prohibited without prior authorization, specifically directed to fill her entire day in each geographic area with job duties, and correspondingly discouraged from taking any time off").

10. *See* Def. Request for Judicial Notice (Dkt. 45) Ex. D (DLSE Opinion Letter No. 2002.09.04) (explaining that the "nature of the work" prong is an "exception" to a "remedial" statute and thus the "burden rests on the employer" to show "that the nature of the work makes it virtually impossible for the employer to provide the employee with an off-duty meal period"); *see also Brinker Rest. Corp. v. Superior Court,* 53 Cal.4th 1004, 1027, 139 Cal.Rptr.3d 315, 273 P.3d 513, 527 (2012) ("When a wage order's validity and application are conceded and the question is only one of interpretation, the usual rules of statutory interpretation apply."); *City of Brentwood v. Cent. Valley Reg'l. Water Quality Control Bd.,* 123 Cal.App.4th 714, 720, 20 Cal.Rptr.3d 322, 326-27 (2004) (extensively reviewing California rules of statutory interpretation to hold that "exceptions to liability in" civil statute were "affirmative defenses" for which defendant had "burden of proof"); *Simpson Strong-Tie Co., Inc. v. Gore,*

49 Cal.4th 12, 25, 109 Cal.Rptr.3d 329, 230 P.3d 1117, 1125 (2010) ("[There is] the long-standing rule of construction that the party seeking to benefit from an exception to a general statute bears the burden to establish the exception.").

11. This phrase is contained in the document titled "Agreement for On-Duty Meal Periods" that Defendant gave to all its employees, including Plaintiff. *See* Lee Decl. (Dkt. 37-1) Ex. A (document labeled Kemppainen Depo. Ex. 4). Defendant objects to this document on the grounds that it: (1) lacks authentication as required by Federal Rule of Evidence 901, given that one of Defendant's deponents stated he had not seen it before; or (2) lacks relevance as required by Federal Rule of Evidence 402 because there is purportedly "no evidence that this document applied during the relevant time period." *See* Def. Objections (Dkt. 46); Lee Decl. (Dkt. 37-1) Ex. A (Kemppainen Depo.) at 27:25-28:15. The Court OVERRULES Defendant's objection regarding authenticity because, as Plaintiff observes, Defendant produced this documents itself and in doing so authenticated it. *See* Pl. Response to Def. Objections (Dkt. 52). The Court OVERRULES Defendant's objection regarding relevance because the document is dated *before* the relevant class period began and thus has a "tendency" to make it more "probable" that the document applied *during* the class period, which is all that is required. *See* Fed.R.Evid. 401; Lee Decl. (Dkt. 37-1) Ex. A (document labeled Kemppainen Depo. Ex. 4 with phrase "Date 10-10-01"). Furthermore, "a *motion for class certification* ... need not be supported by admissible evidence." *Parkinson v. Hyundai Motor Am.,* 258 F.R.D. 580, 599 (C.D.Cal.2008) (certifying some classes); *Heffelfinger v. Elec. Data Sys. Corp.,* 2008 WL 8128621, *2 n. 18, 2008 U.S. Dist. LEXIS 5296, *8 n. 18 (C.D.Cal. Jan. 7, 2008) (same). Finally, regarding the remaining evidentiary objections not specifically addressed in this Order, the Court OVERRULES these objections to the extent the Court relies on the disputed material in this order; otherwise, they are GRANTED.

by Plaintiff and all the putative class members is that Defendant violated this California law because Defendant's policy requiring that Security Guards take only on-duty breaks resulted in Defendant's practice of failing to provide off-duty meal periods. In her Motion, Plaintiff showed that this question was susceptible to common proof by identifying evidence to establish the prima facie case. Specifically, Plaintiff established Defendant's common policy with a document titled "Agreement for On–Duty Meal Periods" that Defendant gave to all its employees and which states that the employee "shall have a work [sic] on-the-job meal period," as well as by Defendant's handbook and the testimony of Defendants' own Rule 26 witnesses. *See* Lee Decl. (Dkt. 37–1) Ex. A (document labeled Kemppainen Depo. Ex. 4). Plaintiff established that Defendant enforces this policy in its practice, shown by the Defendant's witnesses' testimony that Plaintiff and at least 90% to 100% of the putative class—a percentage conceded by Defendant's own Rule 30(b) deponents—worked on-duty meal period. *See* Lee Decl. (Dkt. 37–1) Ex. A (Kemppainen Depo.) at 71:16–72:4; 74:7–75:12 (answering question about percentage of employees who "actually worked on a post that was an on-duty meal break post" with "in excess of 90% easily"); *id.* at Ex. B (Lobue Depo.) 20:8–21:7 (confirming that "all security officers are on on-duty meal breaks"); 52:13–16; 55:16–19 (answering question about whether "all security officers are on on-duty meal breaks" with "Correct").

Courts in this circuit routinely hold that the commonality requirement of Rule 23(a) is satisfied where, as here, the Defendant has a policy and practice that allegedly fails to provide putative class members off-duty meal breaks and thus allegedly violates Wage Order 4–2001 § 11. *See Dilts v. Penske Logistics, LLC,* 267 F.R.D. 625, 633, 636 (S.D.Cal. 2010) (granting class certification and finding commonality because defendants-employers' "policies were common across [d]efendant's California facilities" and case was subject to common proof, namely whether the "policies deprived the putative class members of meal periods," and "common legal questions, such as [d]efendants' obligations under California Labor Code §§ … 226, 226.7," as specified in "Wage Order 4–2001"); *Schulz v. Qualx-Serv, LLC,* No. 09–CV–17–AJB (MDD), 2012 WL 1439066 at *4, 2012 U.S. Dist. LEXIS 58561 at *10–12 (S.D.Cal. Apr. 26, 2012) (granting class certification and finding commonality because the issue of whether "Defendants' policies and practices comply with [Wage Order 4–2001] is the type of question that can be answered on a classwide basis" and listing several cases reaching the same result); *Delagarza v. Tesoro Ref. & Mktg. Co.,* 2011 WL 4017967, *8, 2011 U.S. Dist. LEXIS 101127, *17–19 (N.D.Cal. Sept. 8, 2011) (granting class certification and finding commonality because "Plaintiffs contend, and the evidence indicates, the challenged policy applies to all the members of the class throughout the facility with only exceptional variations").

Although Defendant purports to make arguments regarding the commonality requirement of Rule 23(a), the Court will address these arguments in this order's analysis of the predominance requirement of Rule 23(b)(3) because the authorities Defendant cites base their decision about class certification on the predominance requirement of Rule 23(b)(3), not on the commonality requirement of Rule 23(a). *See e.g., Temple v. Guardsmark LLC,* No. C 09–02124 SI, 2011 WL 723611, *5, 2011 U.S. Dist. LEXIS 21100, *15–16 (N.D.Cal. Feb. 22, 2011) (holding that "[t]here is a question of law common to this class," as required by Rule 23(a), but noting that real point of contention is "whether common questions predominate [as required by] 23(b)(3)"); *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d 953, 957 (9th Cir.2009) ("The question here is whether the district court abused its discretion in finding Rule 23(b)(3)'s predominance requirement."); *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 937 (9th Cir.2009) ("On appeal, we consider whether the district court abused its discretion by … denying class certification based on its reasoning that individual issues predominate over common issues [as per] 23(b)(3).").

In sum, Plaintiff has shown that there is at least one common question of law or fact regarding the Meal Break Class and that the

answer to this question is susceptible to common proof.

### 2. Wage Statement Class

Plaintiff seeks to certify a Wage Statement Class, defined as "all DEFENDANTS['] past and present California employees who worked as Security Guards from September 17, 2009 through the present who received itemized wage statements." Plaintiff's theory is that Defendant's policy and practice of failing to provide off-duty meal periods violated California law, the remedy for which is an additional premium wage, and Defendant's failure to record this additional premium wage on class members' wage statements created other violations of California law: (1) the failure to keep accurate records in violation of California Labor Code § 226(a); and (2) a derivative claim under Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code, §§ 17200 et seq. *See* Mot. (Dkt. 31) at 1; Pl. Response (Dkt. 58) at 6–7.

### a. Legal basis of putative class's claim

As noted previously, if an employer violates California Labor Code Section 226.7 by failing to provide a meal break to an employee in accordance with Wage Order 4–2001, the employer must pay the employee one additional hour of pay—commonly referred to as a "premium"—for each work day that the meal period is not provided. *See* Cal. Lab.Code § 226.7(b); Cal.Code Regs. tit. 8 ("IWC Wage Order 4–2001"), § 11090(11)(D). As the California Supreme Court recently

held in *Murphy v. Kenneth Cole Productions, Inc.,* these "[S]ection 226.7 payments are a form of *wages.*" *See* 40 Cal.4th 1094, 1114, 56 Cal.Rptr.3d 880, 155 P.3d 284 (2007) (emphasis added). California Labor Code Section 226(a) requires employers to keep accurate records and provide itemized wage statements every pay period that include "gross *wages* earned" and "net *wages* earned." Cal. Lab.Code § 226(a) (emphasis added). Thus, if an employer fails to provide appropriate meal breaks—a violation of Section 226.7—and also fails to record the premium accrued as a result of this Section 226.7 violation, the employer has not kept accurate records and so also violates Section 226(a). *Ricaldai v. U.S. Investigations Services, LLC,* 878 F.Supp.2d 1038, 1047 n. 4, CV 10–07388 DDP PLAX, 2012 WL 2930474, *8 n. 4 (C.D.Cal. May 25, 2012) (noting that "[i]f [plaintiff] succeeds on her meal period claim, [defendant] further violated [California Labor Code] Section 226 by failing to include premium pay for each missed meal period"). Indeed, courts often refer to claims for "inaccurate wage statements" under Section 226(a) as "derivative of [plaintiff's meal] break claims" under 226.7. *See White v. Starbucks Corp.,* 497 F.Supp.2d 1080, 1085, 1089–90 (N.D.Cal.2007); *Dilts v. Penske Logistics, LLC,* 267 F.R.D. 625, 640 (S.D.Cal. 2010).[12]

■ In its Supplemental Memorandum,[13] Defendant contends that a recent California

---

**12.** Of course, a Section 226 violation can occur independently of a meal break Section 226.7 violation. However, because an employer that fails to provide meal beaks as required by Section 226.7 is highly unlikely to inform its employees of this violation by recording the premiums its employees accrue, a violation of Section 226.7 usually triggers a violation of Section 226(a). *See* Rutter Cal. Prac. Guide Employment Litigation Ch. 11–C ("[M]ealbreak violations entitle the employee to an extra hour of pay (wages) per type of violation for as long as the violations continue.... Because these extra hours normally are not reflected as earned on the employee's pay stubs, the ... mealbreak violations may arguably result in pay stub violations....").

**13.** After receiving a tentative adverse order in the original May 7, 2012, oral argument on this Motion, Defendant for the first time requested the opportunity to provide supplemental briefing on whether this case was impacted by the April

12, 2012, decision in *Brinker Rest. Corp. v. Superior Court,* 53 Cal.4th 1004, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012). Defendant did not explain why it had failed to request supplemental briefing for almost a month nor acknowledge that this Court's tentative order in fact cited both *Brinker* and a post-*Brinker* case certifying a class for violations of Wage Order No. 4–2001: *Schulz v. QualxServ, LLC,* No. 09–CV–17–AJB (MDD), 2012 WL 1439066, 2012 U.S. Dist. LEXIS 58561 (S.D.Cal. Apr. 26, 2012). Nonetheless, the Court granted Defendant the opportunity to file supplemental briefing to "address *only* the impact of the *Brinker* decision and its progeny on the class certification motion." Minute Order (Dkt. 56). Because the argument in Defendant's Supplement Brief regarding the Rules Enabling Act far exceeds the scope set by the Court's order, the Court STRIKES that argument. While Defendant's *Kirby* argument also exceeds this scope, the Court addresses that argument here because

Supreme Court decision, *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244, 140 Cal.Rptr.3d 173, 274 P.3d 1160 (2012), abrogated *Murphy* by holding that "the remedy under § 226.7 does not constitute a wage." Def. Supplemental Brief at 7:27–28. Defendant is simply wrong. First, *Kirby* reaffirms *Murphy*, noting that the court "held in *Murphy* that this remedy [for a violation of Section 226.7] is a 'wage.'" *Kirby*, 53 Cal.4th at 1256, 140 Cal.Rptr.3d 173, 274 P.3d 1160. Second, the issue of whether a Section 226.7 premium is a wage for purposes of a Section 226 violation was not before the court in *Kirby*; the sole issue that was decided in *Kirby* was whether a prevailing party on a Section 226.7 claim can seek attorneys' fees under California Labor Code Sections 218.5 or 1194. *Kirby*, 53 Cal.4th at 1248, 140 Cal.Rptr.3d 173, 274 P.3d 1160.

Regarding Section 1194, which provides attorneys' fees to employees who receive less than the "legal minimum wage or the legal overtime compensation," the court concluded that this phrase did not include employees who receive less than the premium for a violation of rest breaks under Section 226.7. *Id.* at 1252–53, 140 Cal.Rptr.3d 173, 274 P.3d 1160. In reaching this conclusion, the court explored the meanings to which the "term 'minimum wage' ordinarily refers" and why the legislature "inserted the word 'legal' in front of the first reference to 'overtime compensation.'" *Id.* The court's emphasis was on the adjectives "minimum" and "legal" that modified the term "wage"; at no point did the court conclude that the Section 226.7 premium was not a "wage." *Id.*

Regarding Section 218.5, which provides attorneys' fees in an "action brought for the nonpayment of wages," the court concluded that this phrase did not include an action brought for a violation of rest breaks under Section 226.7. *Id.* at 1256, 140 Cal.Rptr.3d 173, 274 P.3d 1160. The court first distinguished between the "gravamen" of an action under Section 226.7—"violation ... [of] an employer's obligation to provide meal or rest breaks"—and its "remedy"—the premium of

an "additional hour of pay." *Id.* Then, the court explained that Section 218.5's phrase regarding an "action brought for the nonpayment of wages" applies only to the gravamen of the action—"nonpayment of wages"—and not the remedy. *Id.*

In sum, the Court concludes that *Kirby* did not abrogate the holding in *Murphy* nor disturb the settled law that an employer who fails to provide appropriate meal breaks in violation of Section 226.7 and also fails to record the premium accrued as a result of this Section 226.7 violation also violates Section 226(a).

### b. Common question of law and fact exist regarding putative class's prima facie case

■ Courts routinely certify classes and find commonality under Rule 23(a)(2) where, as here, the plaintiff's "meal break claim is ... based on [d]efendants' alleged failure to comply with Wage Order No. 4–2001, which requires the employer to 'record' unpaid meal periods," because such a claim raises common questions of law—whether "employees must reconstruct the time worked and perform the arithmetic to determine if they were fully compensated"—and common proof, that is the wage statements themselves. *Schulz v. QualxServ, LLC*, 2012 WL 1439066 at *8–9, 2012 U.S. Dist. LEXIS 58561 at *24–25 (S.D.Cal. Apr. 26, 2012) (granting class certification and finding commonality under Rule 23(a)); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D.Cal. 2010) (same); *cf. Espinoza v. Domino's Pizza, LLC*, EDCV071601VAP, 2009 WL 882845, *4–5, 15 (C.D.Cal. Feb. 18, 2009) (certifying class under Rule 23(b)(3) both a "Meal Break Class" and "California Labor Code section 226 Class" because common issues predominated where plaintiff's theory for the Meal Break Class was that employer had common policy of failing to provide meal breaks in violation of Work Order No. 9, shown in part by employer requiring class members to sign "On–Duty Meal Period Agreement[s]" stating that "nature of the Employee's work ... prevents the Employee

it does not change the outcome of the Court's tentative. Finally, the Court concludes that *Brinker* does not merit a reversal of the Court's

tentative order; in fact, *Brinker* further supports class certification.

from being relieved of all duty," and plaintiff's theory regarding Section 226 class was that "[d]efendants impermissibly denied them meal breaks, failed to pay them required premia, and failed to list either the foregone meal periods or pay ... on wage statements"). Courts reach this conclusion because a "claim is amenable to class treatment, even if there will be individualized proof of actual damages." *Schulz*, 2012 WL 1439066 at *8, 2012 U.S. Dist. LEXIS 58561 at *25.

Thus, having concluded that the Meal Break Class raises common questions, the Court also concludes that the Wage Statement Class raises common questions.[14]

### v. Subclasses of employees who signed and did not sign the class action waiver

Plaintiff alternatively moves this Court to certify four Subclasses if this Court is not inclined to certify the two Meal Break and Wage Statement Classes due to Defendant's potential affirmative defense regarding some employees' purported agreement to waive their right to bring a class action. Defendants do not appear to oppose class certification based on this affirmative defense. While the Court has concluded that Plaintiff has satisfied Rule 23(a) regarding the two Classes, the Court alternatively concludes that the four Subclasses also satisfy the commonality requirement of Rule 23(a). The Court's reasoning is discussed, infra, in the section regarding the predominance requirement of Rule 23(b)(3).

### b. Plaintiff has satisfied the requirements of Rule 23(b)(3)

After satisfying the requirements of Rule 23(a), the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3). The Court has concluded that the prerequisites of Rule 23(a) are satisfied. Thus, the Court turns to the requirements of Rule 23(b)(3): whether

common questions of law or fact predominate among class members and whether the class device offers a superior means of resolving the dispute. *See United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir.2010).

### i. Predominance under Rule 23(b)(3)

 The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation," a standard "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). However, predominance may exist even where there is "some variation among the individual employees, as well as some potential difficulty in proof." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.2001) (certifying class of employees, despite some variation in proof as to whether individuals would be entitled to backpay).

 One way that a plaintiff can establish predominance is by showing that the "focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 367 (C.D.Cal. 2009); *Local Joint Executive Bd. of Culinary/Bartender Trust Fund*, 244 F.3d at 1162 ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.").

Courts "have traditionally been reluctant to deny class action status" as failing the predominance requirement of Rule 23(b)(3) "simply because affirmative defenses may be available against individual members." *See Lorber v. Beebe*, 407 F.Supp. 279, 294 (S.D.N.Y.1975); *Kelly v. City & County of San Francisco*, C 05–1287 SI, 2005 WL

---

**14.** Similarly, courts certify classes based on UCL claims where the court has certified a class based on another violation of law. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D.Cal.

2010) (certifying UCL class because its claims were "derivative" of class alleging meal and rest breaks that was already certified by the court).

3113065 (N.D.Cal. Nov. 21, 2005) ("Unique affirmative defenses that require some individualized inquiry do not present a per se bar to certification."); 7AA Fed. Prac. & Proc. Civ. § 1778 (3d ed.) ("[T]he action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.").

The Court first addresses the Meal Break Class, then the Wage Statement Class, and finally the Subclasses.

### 1. Meal Break Class

■■■ As the Court explained in its analysis of commonality requirement of Rule 23(a), Plaintiff's prima facie case regarding the Meal Break Class will raise the following common question: Did Defendants' policy requiring that each Security Guard take only an "on-the-job meal period" result in Defendant's practice of failing to provide off-duty meal periods, thus violating California Labor Code 226.7 and Wage Order 4–2001 § 11? Defendant does not appear to dispute that Plaintiff's prima facie case can be resolved by answering this common question. Rather, Defendant contends that one of the three elements of its affirmative defense will require individualized questions that are not susceptible to common proof, namely, whether the nature of the work prevents an employee from being relieved of all duty.[15]

### a. Legal basis for Defendant's affirmative defense regarding the nature of the work

As noted previously in this order, IWC Wage Order 4–2001 requires that the mandatory 30–minute meal break be one in which the employee is "relieved of all duty"—commonly referred to as an "off-duty meal break"—"unless" an exception applies that allows the employer to provide on-duty meal breaks. See id. at § 11(C). That exception is an affirmative defense for which the employer bears the burden to prove: (1) "the nature of the work prevents an employee from being relieved of all duty"; (2) "an on-the-job paid meal period is agreed to" by "written agreement between the parties"; and (3) the written agreement states that "the employee may, in writing, revoke the agreement at any time." See id.; see also DLSE Opinion Letter 2002–09–04.

Defendant argues that the nature of the work element should be construed using the test identified in a 2002 DLSE opinion letter, which is "persuasive" authority regarding the interpretation of IWC wage orders.[16] See Def. Request for Judicial Notice (Dkt. 45) Ex. D (DLSE Opinion Letter No. 2002.09.04). The 2002 DLSE opinion letter states that the "nature of the work" element of the affirmative defense is determined using the following "multi-factor objective test": (1) "type of work"; (2) "availability of other employees to provide relief to an employee during a meal period"; (3) "potential consequences to the employer if the employee is relieved of all duty"; (4) "ability of the employer to anticipate and mitigate these consequences such as by scheduling the work in a manner that would allow the employee to take an off-duty meal break"; and (5) "whether the work product or process will be destroyed or damaged by relieving the employee of all duty." [17] Id.; see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l. Union, AFL–CIO, CLC v. ConocoPhillips Co.,

---

**15.** See Mot. at 13:15–17 ("The *sole* issue of contention between Plaintiff and Defendant is whether the requirement by Defendant to have the putative class members eat their meals 'on-duty' is valid/legal based on the nature of the work defense."); Opp'n at 15:22–24 ("The heart of this case ... is whether the nature of the security guards' duties prevents them from having off-duty meal period.").

**16.** "Enforcement of the wage orders is the province of" the DLSE. *Campbell v. Pricewaterhouse-Coopers, LLP,* 602 F.Supp.2d 1163, 1173 (E.D.Cal.2009) rev'd in part on other grounds by

642 F.3d 820 (9th Cir.2011). Thus, as an "agency charged with administering the statute," the DLSE's opinion letters interpreting the wage orders are "persuasive" authority. See id.; Morillion v. Royal Packing Co., 22 Cal.4th 575, 590, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000).

**17.** The 2002 DLSE letter is interpreting IWC Wage Order 5–2001, which has language regarding the nature of the work that is materially identical to that in the IWC Wage Order 4–2001 at issue here.

CV 08–2068 PSG (FFMX, 2009 WL 734028, *n. 4 (C.D.Cal. Mar. 16, 2009)) (citing "DLSE Opinion Letter 2002.09.04" with approval for providing "factors [that] should be considered when determining whether the nature of the work permits an on-duty meal period").

As the 2002 DLSE letter notes, this nature of the work prong "must be narrowly construed" because it is an "exception" to a "remedial" statute. *Id.* Thus, the "burden rests on the employer" to show that "these factors ... decisively point to the conclusion that the nature of the work makes it virtually impossible for the employer to provide the employee with an off-duty meal period." *Id.*

### b. Common questions of law and fact predominate

Courts in this circuit routinely hold that the predominance requirement of Rule 23(b)(3) is satisfied where, as here, the Defendant has a policy and practice that allegedly fails to provide the putative class members with off-duty meal breaks and which allegedly violate Wage Order 4–2001 § 11. *See Dilts v. Penske Logistics, LLC,* 267 F.R.D. 625, 635–38 (S.D.Cal.2010) (certifying class and finding predominance where the common question of law was "whether Defendant's policies effectively denied [employees] uninterrupted lunch periods" in violation of "Wage Order 4–2001," even though the "majority of Plaintiff's evidence as to this question is anecdotal," because individual inquiries could be avoided by "statistical sampling"); *Adoma v. Univ. of Phoenix, Inc.,* 270 F.R.D. 543, 552 (E.D.Cal.2010) (certifying class and finding predominance where the common question of law was whether defendant "violated their statutory obligation to provide meal periods" and this "question is susceptible to common proof," specifically, the "phone records system" which could "demonstrate how often employees skipped meal periods"); *Ortega v. J.B. Hunt Transp., Inc.,* 258 F.R.D. 361, 368–370 (C.D.Cal.2009) (certifying class and finding predominance where the common question of law was "whether Defendant complied with state law obligations to provide and record code-compliant breaks to class members" under Wage Order 4–2001, " § 11090(11)(A)-(E)"); *Schulz*

*v. QualxServ, LLC,* No. 09–CV–17–AJB (MDD), 2012 WL 1439066, *8, 2012 U.S. Dist. LEXIS 58561, *23–24 (S.D.Cal. Apr. 26, 2012) (granting class certification and finding predominance because plaintiffs challenged the defendants' "common corporate policy of failing to relieve the [employees] of all work during the ... meal breaks" as a violation of "Wage Order No. 4–2001").

For example, in *Delagarza v. Tesoro Refining & Marketing,* the court granted certification and found predominance under Rule 23(b)(3), because the common question of whether Defendant's policy deprived the putative class of "off-duty" meal breaks in violation of Wage Order 4–2001 was susceptible to common proof, shown by defendant's policy requiring on-duty breaks and testimony by the defendant's 30(b)(6) deponents that this policy was implemented in practice. *Delagarza v. Tesoro Ref. & Mktg. Co.,* 2011 WL 4017967, *14, *15–16, 2011 U.S. Dist. LEXIS 101127 *43, *47–48 (N.D.Cal. Sept. 8, 2011). The defendant argued that the "allegations are susceptible to only individual adjudication because there are substantial differences between and among the various positions covered in the purported class" and that "individual job duties vary unit to unit and day to day." *Id.* at *6, *11, 2011 U.S. Dist. LEXIS 101127 at *19, *33–34. The court rejected this argument, however, because "[s]ome of the variations cited by [the defendant] are not material to the central issues in this case—i.e., whether workers, regardless of the nature of their jobs, are afforded an off-duty meal period." *Id.* at 11, 2011 U.S. Dist. LEXIS 101127 at 34. The court reasoned that the plaintiffs could provide common proof because they "rely in large part on [d]efendant's own written policies as well as the company's own supervisors and 30(b)(6) deponents' testimony to make their classwide claim." *Id.* at *17, 2011 U.S. Dist. LEXIS 101127 at *47. In addition, the court noted that even if there was "some" material variation, "such variation does not" defeat the predominance requirement. *Id.* at *11, 2011 U.S. Dist. LEXIS 101127 at *34, *39.

This case is remarkably similar to *Delagarza* because it: (1) involves the *same* common question, that is, whether Defendant's

policy deprived the putative class of off-duty breaks in violation of Wage Order 4–2001; (2) is based on the *same* common proof, shown by Defendant's policy requiring on-duty breaks and testimony about Defendant's practice by its deponents; and (3) Defendant brings the *same* affirmative defense regarding the nature of the work. As in *Delagarza*, Defendant argues that its nature of the work defense is not susceptible to common proof because individual job duties vary by site. This Court rejects Defendant's argument because, just as in *Delagarza*, Defendant has not shown that this variation is "material to the central issues in this case"—that is, Plaintiff's prima facie case alleging that the putative class are not "afforded an off-duty meal period." *Id.* at 11, 2011 U.S. Dist. LEXIS 101127 at 34. Rather, in both *Delagarza* and the present case, Plaintiff's prima facie case is susceptible to common proof because Plaintiff relies on Defendant's "own written policies as well as the company's own supervisors and 30(b)(6) deponents' testimony to make their class-wide claim." *Id.* at *15, 2011 U.S. Dist. LEXIS 101127 at *47.[18] Specifically, these Rule 30(b)(6) deponents stated that at least 90% to 100% of the putative class were all required to work on-duty meal period shifts. *See* Lee Decl. (Dkt. 37–1) Ex. A (Kemppainen Depo.) at 71:16–72:4; 74:7–75:12 (answering question about percentage of employees who "actually worked on a post that was an on-duty meal break post" with "in excess of 90% easily"); *id.* at Ex. B (Lobue Depo.) 20:8–21:7 (confirming that "all security officers are on on-duty meal breaks"); 52:13–16; 55:16–19 (answering question about whether "all security officers are on on-duty meal breaks" with "Correct").

In short, even assuming that the nature of the work *part* of Defendant's *affirmative defense* is not susceptible to common proof, this does not defeat predominance because Plain-tiff's *prima facie* case *is* susceptible to common proof. Plaintiff's use of common proof to establish a prima facie case meets the predominance requirement because the "focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *See Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 367 (C.D.Cal. 2009). Because Plaintiff has shown that the putative class's prima facie case is susceptible to common proof, she has shown that "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," which is all that is necessary to meet the predominance requirement of Rule 23(b)(3). This conclusion is consistent with courts "traditionally be[ing] reluctant to deny class action status" under predominance requirement of Rule 23(b)(3) "simply because affirmative defenses may be available against individual members." *See Lorber v. Beebe*, 407 F.Supp. 279, 294 (S.D.N.Y.1975).

c. **Defendant's argument that the nature of the work part of its affirmative defense will require individualized inquiries not susceptible to common proof is unpersuasive because it relies on inapposite authority and is belied by Defendant's own record**

Defendant contends that the nature of the work part of its affirmative defense will require individualized inquiries that are not susceptible to common proof because: (1) Ninth Circuit precedent regarding the individualized proof necessary to show that the putative class is exempt for purposes of overtime pay should be extended to the present case; (2) a district court case regarding rest breaks should be extended to the present case involving meal breaks; and (3) Defendant can imagine many potential individualized questions that it could ask its employees.

---

**18.** To the extent that Defendant attempts to analogize to *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), this analogy is misplaced. The *Dukes* decision is limited to the facts in that case—employment discrimination based on discretionary promotion where there was no uniform policy—which is highly distinguishable from the current cases which involves a uniform, non-discretionary on-duty meal break policy. *See In Re Medical Capital Securities Litigation*, 2011 WL 5067208, at *3, fn. 1, 2011 U.S. Dist. Lexis 126659, at *20, fn. 1 (C.D.Cal. July 26, 2011). Indeed, "a number of district courts have denied motions to reconsider class certification orders in light of *Dukes*." 3–15A Employee Rights Litigation: Pleading and Practice § 15A.05 (citing several cases).

Plaintiff argues that Defendant relies on inapposite authority for the first two legal arguments and that Defendant's own evidence belies its third, factual argument. The Court is persuaded by Plaintiff's arguments and concludes that the putative class's common question of law and fact regarding its prima facie case and regarding two elements of Defendant's affirmative defense predominate over Defendant's questions regarding the nature of the work element of its affirmative defense.

First, Defendant relies on two Ninth Circuit cases—*Vinole* and *In re Wells Fargo*—for the proposition that a district court can not find predominance by relying *solely* on the existence of an employer's policy that treats all employees the same "to the near exclusion of other relevant factors touching on predominance." *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 955–57 (9th Cir.2009).[19] However, Defendant's reliance on these two cases is misplaced because they involved different substantive law than that at issue here. As Vinole explains, under the federal and California law at issue in both Vinole and Wells Fargo, the determination of whether an employee is "exempt[ ] is a fact-intensive inquiry," requiring an "individualized analysis of the way each employee actually spends his or her time, and not simply [a] review the employer's job description." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 945 (9th Cir.2009). Those cases addressed whether the predominance requirement was met given that individualized proof was needed to resolve whether the putative class

members were exempt under federal and California overtime law. In contrast, Defendant's affirmative defense here requires it to show that the nature of the work of the putative class prevents them from being relieved of all duty as defined by California meal break law. Yet, the multi-factor test used to determine the nature of the work for purposes of Wage Order 4–2001 shares absolutely no prongs with the element-test used to determine if an employee is exempt under federal and California overtime laws.[20]

Furthermore, Defendant's reliance on *Vinole* and *In re Wells Fargo* is misplaced because those cases involved substantive law that required individualized, fact-intensive analysis, whereas the nature of the work defense in Wage Order 4–2001 does not require such an individualized inquiry. *See West v. Circle K Stores, Inc.*, 2006 WL 1652598, *4, 2006 U.S. Dist. LEXIS 42074, *13–14 (E.D.Cal. June 12, 2006) (rejecting argument that the defense "would require an individual inquiry into the nature of each employee's work on every shift where that employee missed a meal break"). In *West,* the court found predominance because "the nature of the work exception is intended to apply to the nature of the work in general and not the circumstances on any given shift" and thus the "predominant issue, and one appropriate for class treatment, is whether defendant's policies, which routinely resulted in employees having to take on-duty meal 'breaks,' were lawful." *Id.* *8, 2006 U.S. Dist. LEXIS 42074 *25. The court reasoned that an individualized-inquiry "rule would potentially eviscerate the protections provided

---

**19.** These cases acknowledge that an employer's "internal policy that treats all employees" the same "undercuts later arguments that the employees are too diverse for uniform treatment" in a motion for class certification. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 955–57 (9th Cir.2009).

**20.** *Compare* DLSE Opinion Letter No. 2002.09.04 (describing the "multi-factor objective test" used to determine if the "nature of the work" element of the affirmative defense has been met as requiring: (1) "type of work"; (2) "availability of other employees to provide relief to an employee during a meal period"; (3) "potential consequences to the employer if the employee is relieved of all duty"; (4) "ability of the employer to anticipate and mitigate these conse-

quences such as by scheduling the work in a manner that would allow the employee to take an off-duty meal break"; and (5) "whether the work product or process will be destroyed or damaged by relieving the employee of all duty.") *with Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 945 (9th Cir.2009) (describing the California law used to determine whether an "outside salesperson exemption" applies as a "two-step inquiry" that requires the court to examine: (1) "in an individualized fashion the work actually performed by the employee to determine how much of that work is exempt"; and (2) "whether the employee's work was consistent with the employer's expectation and whether those expectations were realistic").

by California Labor Code § 226.7, as every employer would defend against a claim of missed meal periods by arguing that, because of the nature of the employee's work on that day, he was too busy to take a break." *Id.* at 4, 2006 U.S. Dist. LEXIS 42074 at 13–14. Instead, the exception applied "when the nature of the work in [the] business overall does not permit a mid-shift meal break." *Id.* at *4, 2006 U.S. Dist. LEXIS 42074 at *13–14; *see also Schulz v. QualxServ, LLC,* 2012 WL 1439066, at *4, 2012 U.S. Dist. LEXIS 58561, at *10–12 (S.D.Cal. Apr. 26, 2012) (finding predominance under Rule 23(b)(3) and treating defendant's nature of the work defense as "a common defense to the rest break and meal period claims based on the nature of field work," and therefore not one requiring individualized proof).[21]

Second, Defendant's reliance on *Temple v. Guardsmark LLC* is misplaced because that case did not involve the nature of the work affirmative defense that Defendant contends goes to the "heart" of this case. *See* Opp'n at 15:22–24; *Temple v. Guardsmark LLC,* 2011 WL 723611, 2011 U.S. Dist. LEXIS 21100 (N.D.Cal. Feb. 22, 2011). On its face, *Temple* appears relevant because in both it and the present case the plaintiff sought to certify a class of security guards for violations of California employment law based in part on a purported agreement between the employer and employee stating that the nature of the work precluded off-duty meal breaks.[22] However, in *Temple,* the putative

class claim was for a violation of the California law regarding 10–minute rest breaks, whereas here the alleged violation is of California law regarding 30–minute meal breaks. *See id.* at *5, 2011 U.S. Dist. LEXIS 21100 at *15–16. As *Temple* explained, a comparison of the law regarding 10–minute rest breaks and 30–minute meal breaks revealed that *only* the latter allowed a nature of the work defense. *Id.* at *5, 2011 U.S. Dist. LEXIS 21100 at *15–16 (analyzing Wage Order 4–2001 § (11)(A) and concluding that the law regarding 30–minute meal breaks allows a "nature of the work" exception whereby "an employer is allowed to provide an on-duty [meal break] period instead of an off-duty [meal break] period," but "[n]o such exception exists for rest periods").[23] Given that the nature of the work was irrelevant to the law governing rest breaks, the document that the defendant required employees to sign stating that the nature of work prevented off-duty *meal* breaks was not relevant to the putative class's claim for *rest* break violations. *Id.* at *6, 2011 U.S. Dist. LEXIS 21100 at *19–20. Here, in contrast, the document that Defendants required employees to sign stating that the nature of work prevented off-duty *meal* breaks is highly relevant to the issue of whether Defendant's nature of work defense raises a common question as to the putative class' claims for *meal* break violations.

■■■ Third, even if Defendant is correct in its interpretations of *Vinole, Wells Fargo,*

---

21. In addition, at least one California court has held that a defendant's affirmative defense that the nature of the work requires on-duty meal periods under Wage Order 4–2001 can be adjudicated on a class-wide basis. *See Bufil v. Dollar Fin. Group, Inc.,* 162 Cal.App.4th 1193, 1203, 76 Cal.Rptr.3d 804, 811 (2008) (reversing denial of class certification where plaintiff sought to certify classes under the "theory is that the [classes] do not come within the 'nature of the work' exception set forth in Wage Order No. 4–2001, so as to permit an 'on-duty' meal period" because lower court, in denying class certification, "made an erroneous assumption that each class member would need to testify as to his or her understanding of the meal period waiver").

22. *Compare Temple v. Guardsmark LLC,* 2011 WL 723611, *3, *6, 2011 U.S. Dist. LEXIS 21100, *7–8, *19–20 (N.D.Cal. Feb. 22, 2011) (describing "off-duty lunch waivers" that defendant gave its employees to sign requiring the employees to

"forgo[ ] their right to an off-duty meal period" because the " 'nature of the work' ... sometimes prevent[s] solo shift workers from being able to take off-duty meal periods," and finding lack of predominance because the court doubted "the waivers are as powerful a piece of evidence as plaintiffs believe") *with* Lee Decl. (Dkt. 37–1) Ex. A (document titled "Agreement for On–Duty Meal Periods" that Defendant gave to all its employees requiring "on-the-job meal period" because "the nature of the Associate's work prevents the Associate from being relieved of all duty").

23. *Temple's* distinction between meal and rest breaks is correct. *See Bufil v. Dollar Fin. Group, Inc.,* 162 Cal.App.4th 1193, 1205, 76 Cal.Rptr.3d 804, 813 (2008) (interpreting the same statutes at issue in *Temple* to conclude that the "permitted waiver of the meal requirement applies only to meal periods, not to rest breaks").

and *Temple*, Defendant has not provided evidence showing that the nature of the work done by *this* putative class is not capable of common proof. Defendant lists 29 questions that would purportedly require individualized proof. *See* Opp'n at 16–17. However, the predominance requirement of Rule 23(b)(3) is not a "quantitative" test that defendant can defeat by simply listing *more* questions than those provided by the plaintiff. 7AA Fed. Prac. & Proc. Civ. § 1778 (3d ed.). To defeat class certification, the individualized questions must be "material to the central issues in this case"; individualized questions pose no obstacle to class certification *unless* their resolution will have an important impact on the outcome of the putative class's claims. *Delagarza v. Tesoro Ref. & Mktg. Co.*, 2011 WL 4017967, *11, 2011 U.S. Dist. LEXIS 101127, *34 (N.D.Cal. Sept. 8, 2011). To paraphrase the Supreme Court, "what matters to class certification" is not the raising of individualized inquiries—even in droves—but, rather "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." [24] *Cf. Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). Defendant's list of 29 questions does not defeat the predominance requirement because Defendant does not explain how the answer to these 29 questions "will resolve an issue that is central to the validity of [the class's] claims." *Cf. id.*

Finally, even if the Court had not struck Defendant's survey and declarations, this evidence suggests that these purportedly individualized questions about the nature of the work done by the putative class would yield common answers—which supports a finding of predominance rather than undermines it. For example, one of the factors in the nature of the work defense is the availability of other employees to provide relief to an employee during a meal period; Defendant's survey of 30 currently-employed Security Officers reveals that 80% worked at sites that

had more than one Security Guard present at some point during their shift. *See* Goldberg Decl. (Dkt. 41) ¶ 11. To the extent that Defendant argues that these numbers should be 100%, it is wrong on the law; predominance may exist even where there is "some variation among the individual employees, as well as some potential difficulty in proof." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.2001) (certifying class of employees, despite some variation in proof as to whether individuals would be entitled to backpay); *Delagarza v. Tesoro Ref. & Mktg. Co.*, 2011 WL 4017967, *11, *12–13, 2011 U.S. Dist. LEXIS 101127 *34, *39 (N.D.Cal. Sept. 8, 2011) (noting that "some" material variation does not defeat the predominance requirement).

### 2. Wage Statement Class

As noted in this order's discussion of the commonality requirement under Rule 23(a), the Wage Statement Class is based on Plaintiff's theory that Defendant's policy and practice of failing to provide off-duty meal periods violated California law, the remedy for which is an additional premium wage, and Defendant's failure to record this additional premium wage on class members' wage statements created other violations of California law: (1) the failure to keep accurate records in violation of California Labor Code § 226(a); and (2) a derivative claim under California's Unfair Competition Law ("UCL"). *See* Mot. (Dkt. 31) at 1; Pl. Response (Dkt. 58) at 6–7. Thus, as previously discussed, the Wage Statement Class's Section 226(a) claim is "derivative" of their Section 226.7 claim. *See White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1085, 1089–90 (N.D.Cal.2007). Because the Section 226(a) claims are derivative, this order's holding that common questions predominate over the Section 226.7 claim also applies to the Section 226 claim.[25]

---

**24.** Indeed, to further paraphrase the Supreme Court, "[a]ny competently crafted" opposition to a class certification can raise individualized questions—for example, on what date was each employee born? *Cf. Wal–Mart*, 131 S.Ct. at 2551. But this does not mean that a defendant can defeat class certification simply by listing, in

a Joycean stream of consciousness, several individualized questions that do not significantly impact the outcome of litigation.

**25.** Defendant argues that the same individualized inquiries regarding its nature of work defense are also required to resolve the Wage Statement

The only additional element not required of a Section 226.7 claim but required of a Section 226 claim—the failure to keep accurate records and provide itemized wage statements every pay period that include "gross wages earned" and "net wages earned"—is susceptible to common proof: the wage statements themselves. *See* Cal. Labor Code § 226(a). Defendant's own payroll records, including dates of employment, paycheck stubs, and timesheets can be used to show the violations and measure damages. The Section 226 claim is suitable for class treatment because the damage to the employee who receives an inaccurate wage statement is automatic. *Wang v. Chinese Daily News, Inc.*, 435 F.Supp.2d 1042, 1050–51 (C.D.Cal.2006); *Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361, 374 (C.D.Cal.2009).

Courts routinely certify classes and predominance under Rule 23(b)(3) where, as here, the plaintiff's "meal break claim is . . . based on [d]efendants' alleged failure to comply with Wage Order No. 4–2001, which requires the employer to 'record' unpaid meal periods," because such a claim raises common questions of law—whether "employees must reconstruct the time worked and perform the arithmetic to determine if they were fully compensated"—and common proof, that is the wage statements themselves. *Schulz v. QualxServ, LLC*, 2012 WL 1439066 at *8, 2012 U.S. Dist. LEXIS 58561 at *24–5 (S.D.Cal. Apr. 26, 2012) (granting class certification and finding predominance under Rule 23(b)(3)); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D.Cal.2010) (same). Courts reach this conclusion be-cause a "claim is amenable to class treatment, even if there will be individualized proof of actual damages." *Schulz*, 2012 WL 1439066 at *8, 2012 U.S. Dist. LEXIS 58561 at *25.

Thus, having concluded that common questions of law or fact predominate regarding the Meal Break Class's claim, the Court also concludes that the same common questions predominate regarding the Wage Statement Class's claim.[26]

### 3. Subclasses of employees who signed and did not sign the class action waiver

Plaintiffs alternatively moved for this Court to certify four Subclasses if this Court is not inclined to certify the two Meal Break and Wage Statement Classes due to Defendant's potential affirmative defense regarding some employees' purported agreement to waive their right to bring a class action. Defendants do not appear to oppose class certification based on this affirmative defense. While the Court has concluded that Plaintiff has satisfied the predominance requirement of Rule 23(b)(3) regarding the two Classes, the Court alternatively concludes that the four Subclasses also satisfy the predominance requirement of Rule 23(b)(3).

The Court agrees with Plaintiff that Defendant's potential affirmative defense raises one common question of fact that predominates, namely, whether putative class members signed a document purporting to be a Dispute Resolution Agreement containing a Class Action Waiver. *See* Mot. at 21–22; Lee Decl. (Dkt. 37) A (Kemppainen Depo.) at 36:14–37:1, 76:9–24 (describing Defendant's

---

Class's claim given that Plaintiff's "claim is premised upon the theory that [Defendant's] wage statements are inaccurate because" the nature of work does not require on-duty meal periods. Opp'n at 20. Having concluded that the nature of the work defense does not require individualized inquiries, this Court rejects Defendant's argument for the same reasons.

**26.** Similarly, courts certify classes based on UCL claims where the court has certified a class based on another violation of law. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D.Cal. 2010) (certifying UCL class because its claims were "derivative" of class alleging meal and rest breaks that was already certified by the court).

This is especially true where, as here, Plaintiff argues that her claim under the UCL, which prohibits any unlawful, unfair or fraudulent business act or practice, "is predicated upon Defendant's violations of the Labor Code" Sections 226 and 226.7. *See* Mot. at 15; *Cel–Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). Because this UCL claim is derivative of Plaintiff's other claims (excepting the PAGA claim, a finding of predominance to warrant certification of the Classes or Subclasses alleging these claims likewise supports certification of the Classes or Subclasses as to the UCL claim).

inclusion of Class Action Waiver in its arbitration policy beginning in July or August of 2011), Exs. C (arbitration policy without a Class Action Waiver), D (arbitration policy with Class Action Waiver).[27]

In addition, Defendant's potential affirmative defense raises a common question of law that predominates, namely, whether *AT & T Mobility LLC v. Concepcion*, — U.S. —, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) can be extended beyond consumer contracts to render valid the class action waivers in employee contracts. *See D.R. Horton, Inc.*, 357 NLRB No. 184 (2012) (holding that an employer violates the National Labor Relations Act, 29 U.S.C. § 157, when it requires an employee to sign an agreement precluding class or collective claims concerning their wages, hours, or other working conditions); *see also Franco v. Athens Disposal Co., Inc.*, 171 Cal.App.4th 1277, 1294, 90 Cal.Rptr.3d 539, 551 (2009) (holding that class action waiver was invalid as to Section 226.7 and PAGA claims, the same statutes at issue here); *Brown v. Ralphs Grocery Co.*, 197 Cal. App.4th 489, 494, 128 Cal.Rptr.3d 854, 856 (2011) *cert. denied,* — U.S. —, 132 S.Ct. 1910, 182 L.Ed.2d 771 (2012) (following *Franco* and holding that *Concepcion* "does not apply to representative actions under the PAGA" and thus "the trial court correctly ruled" that the "class action waiver provision in plaintiff's employment agreement" was "not enforceable under California law" as applied to plaintiff PAGA claim).

Furthermore, Plaintiff's potential waiver argument in response to this affirmative defense raises a common question of law that predominates and can be answered with common proof, namely, Defendant's actions in this litigation. *See e.g., Lomas v. Travelers Prop. Cas. Corp. (In re Citigroup, Inc. Capi-*

*tal Accumulation Plan Litig.)*, 376 F.3d 23, 26 (1st Cir.2004) (holding employer waived arbitration by, among other things, filing a motion for summary judgment, "vigorously" opposing class certification, and undertaking discovery); *Plows v. Rockwell Collins, Inc.*, 812 F.Supp.2d 1063, 1068 (C.D.Cal.2011) (holding that employer waived arbitration of plaintiff's claim under Cal.Bus. & Prof.Code § 17200—one of the statutes at issue in this case—because employer "waited more than a year to request arbitration" and plaintiff had responded to discovery requests).

Finally, the "fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification." *Herrera v. LCS Fin. Services Corp.*, 274 F.R.D. 666, 681 (N.D.Cal.2011) (certifying class under Rule 23(b)(3) and citing cases); *Davis v. Four Seasons Hotel Ltd.*, CIV. 08–00525 HG–BMK, 2011 WL 4590393, *3 (D.Haw. Sept. 30, 2011) (citing "several courts [that] have addressed the effect of arbitration agreements among members of a putative class" to hold that arbitration agreements signed by 24% of class member employees "does not bar class certification" under Rule 23(b)(3)).

Thus, while the Court has concluded that Plaintiff has satisfied the predominance requirement of Rule 23(b)(3) regarding the two Classes, the Court alternatively concludes that the four Subclasses also satisfy the predominance requirement of Rule 23(b)(3).

#### 4. Conclusion

Thus, both the two Classes and four Subclasses satisfy the predominance requirement of Rule 23(b)(3).

---

**27.** Defendant objects to: (1) Exhibit C, arguing that it is not relevant as required by Federal Rule of Evidence 402; and (2) Plaintiff's attorney's declaration that Exhibits C and D each are "a true and correct copy of Defendant's arbitration policy" at various relevant times, arguing that this is a hearsay statement excluded under Federal Rules of Evidence 802 and lacking personal knowledge as required by Rules 602 and 901(b)(1). *See* Def. Objections (Dkt. 46). The Court OVERRULES Defendant's objections because Exhibits C and D are relevant and Defen-

dant, in producing these documents in discovery, averred that they were true and correct copies. *See* Pl. Response to Def. Objections (Dkt. 52). Furthermore, "a motion for class certification ... need not be supported by admissible evidence." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D.Cal.2008) (certifying some classes); *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621, *2 n. 18, 2008 U.S. Dist. LEXIS 5296, *8 n. 18 (C.D.Cal. Jan. 7, 2008) (same).

#### ii. Superiority under Rule 23(b)(3)

■■ The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Here, "[g]iven the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action." *See Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524, 537 (C.D.Cal.2011) *reconsideration denied,* 280 F.R.D. 540 (C.D.Cal.2012). Indeed, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." *Deposit Guar. Nat'l. Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Furthermore, each member of the class pursuing a claim individually would burden the judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23. *See Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 946 (9th Cir.2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy.").

To the extent that Defendant argues that the class action vehicle renders trial inherently unmanageable, this case is eminently manageable and damages may be presented easily at trial or prior to trial in a class-wide Rule 56 motion. Contrary to Defendant's arguments, Plaintiff need not question each and every class member, as representational testimony is a fully acceptable method of establishing proof. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *McLaughlin v. Ho Fat Seto,* 850 F.2d 586, 589 (9th Cir.1988) (5 out of 28 employees testified).

Finally, the superiority of a class action is evident when considering the grim alternatives. In one scenario, the 1,439 putative class members each file individual claims, an unrealistic prospect that, if it occurred, would needlessly consume judicial resources in a repetitive readjudication of the same facts and law. In another, more likely scenario, these individual actions are never brought because the putative class members are hourly employees with relatively modest individual claims and limited resources. Moreover, many class members might not bring individual actions out of fear of retaliation. While the lack of litigation might save judicial resources, such savings should not come at the expense of employees with legitimate claims. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund,* 244 F.3d 1152, 1163 (9th Cir.2001) (superiority requirement met where class members would recover, at most, about $1,330).

### IV. Disposition

For the foregoing reasons, the Court concludes that Plaintiff has satisfied the requirements of Rule 23(a) and (b)(3) and thus GRANTS certification of the Meal Break and Wage Statement Classes and the four Subclasses.